**Ashley D. BRANNING, et al., Plaintiffs,**

v.

**CNA INSURANCE COMPANIES, et al., Defendants.**

No. C88–764R.

United States District Court,
W.D. Washington,
at Seattle.

April 19, 1989.

---

J. Ronald Sim, Schweppe, Krug & Tausend, P.S., Seattle, Wash., for Ashley D. Branning, Winifred L. Branning, Alan R. Smith and Susan J. Smith.

Marc Allen Boman and James P. Savitt, Perkins Coie, Seattle, Wash., for Federal Sav. & Loan Ins. Corp.

John W. Lundin, Seattle, Wash., for John R. Shepherd and Kay Shepherd.

Scott A. Candoo, Tacoma, Wash., for Patricia Strand.

John E. Heath, Jr., Witherspoon, Kelley, Davenport & Toole, P.S., Spokane, Wash., and Carl J. Carlson and Charles Dean Little, LeSourd & Patten, Seattle, Wash., for Preston E. Macy and Mary Jo Macy.

Thomas M. Fitzpatrick, Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax, Seattle, Wash., for American Cas. Co. of Reading, Pa., CNA Ins. Companies, Continental Cas. Co. and Nat. Fire Ins. Co.

Charles E. Watts, Bellevue, Wash., for James McMillan and Ruth McMillan.

Robert J. Henry, Cable, Langenbach, Henry, Edmunds & Kinerk, Seattle, Wash., for Jane Doe Wozniak and Joseph Wozniak.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on cross motions for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. FACTS

This case presents yet another layer to the litigation arising from the failure of Home Savings and Loan Association ("Home Savings"). On August 10, 1984, Home Savings purchased Directors' and Officers' Liability Insurance ("the policy") from defendant CNA Insurance Companies ("CNA"). This policy insured the directors and officers of Home Savings for:

any Wrongful Act committed prior to the termination of this policy arising from any claim made (i) within the policy period or (ii) within the discovery period if the right is exercised by the association.

*See* Directors' and Officers' Liability Insurance Policy ¶ 2(a), exhibit A to Affidavit of Roger W. Novak.

On October 4, 1984, the Washington State Supervisor of the Division of Savings and Loan Associations ordered Home Savings to cease and desist from engaging in business practices which were unsafe or unsound. *See* Temporary Cease and Desist Order, exhibit A to the Affidavit of Joseph E. Bringman. The Supervisor made the following findings in support of the order:

(1) The board of directors of Home Savings and Loan Association has not adopted current policies or procedures with respect to the underwriting, approval, or documentation of lending for commercial purposes. There are currently no specific guidelines being used by management of Home Savings and Loan Association for these types of loans.

(2) During the period from November 1983 to August 1984, 15 loans of a commercial nature have been granted for an aggregate total of $13.8 million. In addi-

tion, the association has current commitments to fund 10 loans in the aggregate amount of approximately $9.9 million. *See* Temporary Cease and Desist Order, *supra.* CNA learned of the cease and desist order and subsequent stipulation and consent agreement when Home Savings applied for a renewal of its Blanket Bond policy, on November 20, 1984.

Two weeks later, on December 5, 1984, CNA notified Home Savings that it was cancelling the directors' and officers' policy among others.[1] *See* exhibit G to Bringman Affidavit, *supra.* As its reasons for cancelling all of Home Savings' policies, CNA pointed to Home Savings',

1. Overall declining financial strength;
2. The nature of the reasons the FHLBB–Seattle WA originally issued the Cease and Desist Order.

*See* exhibit C to Bringman Affidavit, *supra.* Originally, the policy extended coverage from July 1, 1984 to July 1, 1985, but once CNA cancelled the policy as of January 9, 1985, Home Savings paid an additional premium to extend discovery of claims for 90 days until April 9, 1985.

On March 21, 1985, Home Savings notified CNA of four potential claims against its officers and directors for the McCuin, Alaskan State Bank, Falcon, and Mariner Cove loans. *See* exhibits I—L to Bringman Affidavit, *supra.* CNA has settled the claims relative to the McCuin loan. *See* *FSLIC v. McCuin, et al.*, No. C85–1428Z (W.D.Wa.1988). Nearly two years later, on March 12, 1987, the Federal Home Loan Bank Board ("Bank Board") notified CNA of numerous speculative and poorly underwritten loans by Home Savings' officers and directors, the loans which are at issue here. *See* exhibit M to Bringman Affidavit, *supra.*

On March 13, 1987, the Federal Home Loan Bank Board ("Bank Board") appointed plaintiff Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of Home Savings. That same day, FSLIC sold most of Home Savings' assets and liabilities to InterWest Savings Bank, funded in part by FSLIC's payment to InterWest of $22 million. *See* Declaration of Patricia A. McJoynt ¶¶ 1–5. FSLIC-corporate retained certain claims, however, including those against Home Savings' directors and officers and against the policy which insured them.

On July 22, 1987, FSLIC filed suit against the officers and directors, alleging negligence and breach of fiduciary duties. *See FSLIC v. Grey*, No. C87–1000R (W.D. Wa.1987). On June 14, 1988, plaintiffs, including FSLIC, filed this action against defendants, seeking a declaratory judgment that the directors' and officers' policy covers the claims alleged in *FSLIC v. Grey.* Both plaintiffs and defendants now move for summary judgment.

## II. DISCUSSION

### A. Standard For Summary Judgment

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir.1981).

### B. Notice

In the directors' and officers' policy, the parties agreed to the following provision for notice of claims:

**6. NOTICE OF CLAIMS**

(a) If during the policy period the Association or the Directors or Officers shall:
(i) receive written or oral notice from any party that it is the intention of such

---

1. CNA also cancelled three other insurance policies with Home Savings on December 4 and 5, 1984. *See* exhibits C–G to Bringman Affidavit, *supra.* On December 20, 1984, CNA cancelled three more insurance policies with Home Savings.

party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act, or (ii) become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers or any of them, for a Wrongful Act; and shall, during such period give written notice thereof to the Insurer as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the policy year in which such notice was given.

*See* Directors' and Officers' Policy ¶ 6(a), *supra.*

CNA contends that since plaintiffs gave notice of claims on March 12, 1987, long after the policy's discovery period expired on April 9, 1985, plaintiffs failed to provide adequate notice under paragraph 6(a)(i). CNA notes that Home Savings purchased a "claims made" policy—one that covers any claim made against the officers or directors during the policy period. In contrast, an "occurrence" policy, like the one that Home Savings had the opportunity to purchase, would have covered claims arising from events which occurred during the policy period, regardless of when the claims were actually made. CNA argues that plaintiffs' attempt to recover here is in truth an attempt to transform its "claims made" policy into an "occurrence" policy.

The court finds, however, that Home Savings did give adequate notice to CNA of the occurrences which spawned the claims in *FSLIC v. Grey.* Under paragraph 6(a)(ii) of the policy, Home Savings could give notice not of a fully developed claim against the officers or directors, but rather "any occurrence which may subsequently give rise to a claim". *Id.* The attachments to Home Savings' renewal request for a Blanket Bond did exactly that.

■ The cease and desist order gave notice to CNA that Home Savings had no procedures for underwriting, approving, or documenting commercial loans, yet Home Savings had made at least 25 commercial loans for a total of $23.7 million. Since CNA cancelled all of Home Savings' policies based on this information, the cease and desist order is adequate notice of the occurrences which gave rise to the claims in *FSLIC v. Grey.*[2] CNA's "claims made" policy by its terms extends to occurrences which later give rise to claims, as long as CNA had notice of the occurrences. The court finds that CNA had such notice.

The court also finds that summary judgment is appropriate on the issue of notice. The parties do not dispute what CNA knew and when, but rather whether the communications between CNA and Home Savings constitute notice of an occurrence under the policy. Since the court finds no genuine issues of material fact, it grants summary judgment to plaintiffs. Provided that plaintiffs can trace a particular claim back to the events described in the temporary cease and desist order or subsequent consent agreement, CNA had notice of the occurrence and eventual claim under paragraph 6(a)(ii) of the directors' and officers' policy.

### C. *The FSLIC Exclusion*

CNA next contends that endorsement number 5 ("the FSLIC exclusion") withholds coverage for any claim made by FSLIC or the Bank Board. The FSLIC exclusion states that,

the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based on or attributable to: any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, any other depository insurance organization, the

---

2. In fact, the District Court for the Central District of California has ruled that a similar order from the Federal Bank Board constitutes a claim made against officers and directors. *See Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469

(C.D.Cal.1987), exhibit A to Defendants' Memorandum in Support. This court need not go so far, ruling instead that the cease and desist order is notice of an occurrence as defined in the policy.

Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise.

*See* Endorsement 5 to the Directors' and Officers' Policy, *supra.* CNA argues that the FSLIC exclusion on its face precludes recovery for any claims brought by FSLIC. In response, plaintiffs contend that the exclusion is both ambiguous and contrary to public policy.

■ The court finds that the clause substantially hinders FSLIC's exercise of its federal powers and therefore is contrary to federal policy. Under 12 U.S.C. § 1729(d), Congress explicitly authorized FSLIC to

> collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, *subject only to the regulation of the Federal Home Loan Bank Board ...*

12 U.S.C. § 1729(d); *see also* 12 CFR § 549.3(a) (collect all obligations and money due). If the court were to enforce the FSLIC exclusion as written, all of FSLIC's claims, regardless of their origin or status under the policy, would not be covered simply because FSLIC rather than a shareholder, depositor, or third party prosecuted the claim. Private parties to an insurance contract may not frustrate the Congressional purpose behind receivership by annulling FSLIC's federal powers. *FSLIC v. Oldenburg*, 671 F.Supp. 720, 723 (D.Utah 1987).[3]

Since no issues of fact exist on this issue, the court grants summary judgment to

plaintiffs on the enforceability of the FSLIC exclusion.

### D. The Insured Versus Insured Exclusion

Finally, CNA contends that endorsement number 6 ("the insured v. insured exclusion") bars recovery under the policy. Endorsement 6 provides that,

> the Insurer shall not be liable to make any payment for Loss ... which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution ... except for a shareholders derivative action brought by a shareholder of the institution other than an Insured.

Endorsement 6 to Directors' and Officers' Policy, *supra.* CNA argues that as an assignee, FSLIC stands in the shoes of Home Savings and thus, FSLIC is subject to the same exemptions as the Bank. Since endorsement 6 would exclude coverage if Home Savings sued its officers or directors, the endorsement also withholds recovery if FSLIC sues on behalf of Home Savings.

■ The court finds, however, that FSLIC does not merely stand in the shoes of Home Savings. By statute, FSLIC represents depositors, shareholders, creditors and the federal insurance fund as well as the failed institution. *See* 12 U.S.C. § 1729(c)(3)(B); 12 CFR § 569a.6(3). The court rules therefore that since endorsement 6 does not exclude claims brought on behalf of shareholders, creditors, and the insurance fund, FSLIC's claims are covered. To rule otherwise would frustrate the purpose of the agency as well as its ability to revive failed savings and loans. *FDIC v. National Union Fire Ins.*, 630 F.Supp. 1149, 1154–55 (W.D.La.1986).[4]

---

**3.** CNA attempts to distinguish *Oldenburg* on the grounds that Washington law has changed to the contrary of Utah's. *Compare Progressive Casualty Insurance Co. v. Jester*, 102 Wash.2d 78, 80–81, 683 P.2d 180 (1984) *with Farmers Insurance Exchange v. Call*, 712 P.2d 231, 235 (Utah 1985). CNA's argument fails on two points. First, the rights, powers and obligations of FSLIC is a matter of federal, not state law. *See D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447,

472, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942) (Jackson, J., concurring). Second, the District Court in *Oldenburg* used the circumstances in *Farmers Ins. v. Call* as an example of a principle long since decided: private contracts may not contradict the purposes of public regulation.

**4.** CNA cites to an unpublished order from the District Court for the Central District of California which applied the insured v. insured clause to the FDIC. *See Evanston Ins. Co. v. FDIC*, No.

CNA makes a final argument that FSLIC has shown no loss to the depositors, shareholders, or creditors, and therefore has no claim to make for them. The court finds to the contrary. FSLIC sold the assets and liabilities of Home Savings only by also paying $22 million from the insurance fund. This payment represents the loss to creditors, depositors and shareholders that FSLIC averted and FSLIC may seek to recover this payment from Home Savings' directors and officers. As a consequence, the loss to the insurance fund is in truth the once potential loss to the class of parties FSLIC represents. Thus, the court finds adequate evidence of loss.

Since no genuine issues of material fact exist on this issue, the court grants summary judgment to plaintiffs.

THEREFORE, plaintiffs' motion for summary judgment is GRANTED.

CV 88–0407 (C.D.Ca. May 17, 1988). Needless to say, this court finds the reasoning in *National Union* persuasive and *Evanston* distinguishable: the court in *Evanston* scrutinized carefully the phrase "by or in the right of South Coast [Bank]". That phrase does not appear in endorsement 6.