### TIG SPECIALTY INSURANCE COMPANY, Petitioner

v.

**M. Diane KOKEN, in her capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, as Statutory Liquidator of HRM Health Plans (PA), Inc., Edward Borst, Julia Campion, Thomas P. Clark, Janet Y. Cosby–Dyer, William R. Friedman, Lawrence Kaye, Adele Kimpbell, Tracy C. Kuehni, Leland G. LeBlanc, Paul A.**

**Leland, Gary T. McIlroy, M.D., Donald Mitrane, M.D., Robert L. Montgomery, Corbett A. Price, Luis A. Rosa, Desiree M. Slabik, Marlene O. Travis, and Josephine Y. Worthington, Respondents.**

Commonwealth Court of Pennsylvania.

Heard April 1, 2004.

Decided July 8, 2004.

Publication Ordered Aug. 3, 2004.

---

Jeffry W. Duffy, Jr., Washington, for plaintiff.

Kathryn Lease Simpson, Harrisburg, for defendants.

William E. Mahoney, Jr., Philadelphia, for defendant, Insurance Department.

Jeffrey A. Cohen, Cherry Hill, for defendants, P. Leland and T. Kuehni.

Russell Massey, Philadelphia, for defendant, J. Campion.

OPINION BY Judge COHN.

This case requires us to evaluate the language of an exclusion in a Directors' and Officers' Liability insurance policy (D & O Policy) to determine if it precludes insurance coverage for a claim brought by the Pennsylvania Insurance Commissioner in her role as Statutory Liquidator (Liquidator) against the directors and officers of an insurance company.

The case is related to a statutory liquidation proceeding[1] involving an insolvent insurer/medical benefits coordinator named Health Resources Management Health Plans (PA), Inc. (HRM Health Plans (PA) or HRMPA). The Liquidator filed a separate action against the Directors and Officers of HRMPA ("D & O Action"), alleging various breaches of their fiduciary duties and seeking to recover damages. Health Resources Management, Inc. (HRM) the parent company of HRMPA, had purchased a Directors' & Officers' Liability Insurance Policy from TIG Specialty Insurance Company (TIG) to protect the Directors and Officers of both companies. TIG and the Directors and Officers seek a declaratory judgment from this Court as to whether the D & O Policy provides insurance coverage for the claims in the D & O Action. Before the Court are four motions for judgment on the pleadings filed by TIG and various Officers and Directors of HRMPA.

**FACTUAL BACKGROUND**[2]

*HRM and HRMPA Business Relationship*

In 1993, the Pennsylvania Department of Public Welfare (DPW)[3] entered into a Healthchoices agreement with Oxford Health Plans, Inc. (Oxford), a certified Pennsylvania HMO (health maintenance organization),[4] under which Oxford provided medical benefits to Pennsylvania Medicaid recipients in Philadelphia, Bucks, Chester, Delaware and Montgomery Counties. In 1998, Oxford entered into an agreement (Oxford Agreement) with HRM, a Minnesota Corporation, to provide third party administrative services for Oxford's part of the Healthchoices agreement. Under this agreement, the administrative fees would not exceed $20 per Medicaid recipient, of which there were approximately 73,000 per month. The Oxford Agreement was for a five year period, beginning April 15, 1998.

In 1999, HRM acquired Oxford by purchasing all of Oxford's stock. HRM changed Oxford's name to HRM Health Plans (PA), Inc. HRMPA, thus, was a wholly owned subsidiary of HRM that was separately incorporated with its statutory office and principal place of business in Philadelphia, PA. As a separate corporation, it maintained its own corporate officers and directors. Nevertheless, most of HRMPA's officers and directors were also officers or directors of HRM.[5]

1. *M. Diane Koken, Insurance Commissioner Commonwealth of Pennsylvania v. HRM Health Plans (PA), Inc.,* 407 MD 2001.

2. The facts are drawn from the Amended Complaint in the D & O Action at 594 MD 2002.

3. DPW is responsible for providing Medicaid services to eligible Pennsylvania citizens.

4. The Healthchoices agreement was designed to provide Medicaid benefits to recipients through means of HMOs with whom the Commonwealth contracted to administer medical benefits.

5. The record reveals that three of HRMPA's directors had no relationship with HRM.

HRMPA had a Healthchoices agreement with DPW. As had Oxford, HRMPA also entered into an administrative service agreement with HRM, effective January 1, 1999 (HRMPA Agreement). As with the Oxford agreement, HRM agreed to provide all administrative and managerial services for HRMPA. This managerial agreement remained in effect for all times relevant to this litigation.

As an HMO, HRMPA was subject to regulation under Pennsylvania insurance laws. Under these laws, the Pennsylvania Insurance Commissioner regulates covered organizations ensuring each has sufficient assets to remain solvent. These laws direct that, in instances of a covered corporation facing insolvency, the Insurance Commissioner may petition this Court to place the insurer into rehabilitation, through which the Insurance Commissioner, acting as a Rehabilitator, works with the insurer to restore solvency. If rehabilitation efforts prove unsuccessful, the Insurance Commissioner may petition the Court to enter the insurer into liquidation, at which time the Insurance Commissioner, in her role as Liquidator, is charged with marshalling the insurer's assets for distribution to creditors.

In 2001, HRMPA had difficulty fulfilling its financial obligations, resulting in the Insurance Commissioner asserting control over HRMPA under the rehabilitation provisions of the Act. The instant proceeding arises from the purported actions and inactions of HRMPA Directors and Officers during the period from January 1, 1999, until the Insurance Commissioner asserted control over the company in September 2001.

*Liquidator's Action to Recoup Assets*

Within a few weeks of HRMPA entering rehabilitation, the Insurance Commissioner petitioned this Court to have HRMPA placed into liquidation. This Court granted that petition on September 20, 2001, effective October 1, 2001. In her role as Statutory Liquidator, the Insurance Commissioner filed a complaint with the Commonwealth Court at Docket Number 594 M.D. 2002, seeking to recover from HRMPA's Directors and Officers, the lost value of HRMPA's assets which allegedly resulted from breaches of their fiduciary duties in their management of HRMPA (D & O Action).

In the D & O Action, the Liquidator first argues that HRMPA allowed HRM to increase its management fee by 50% without requiring HRM to provide any business justification for doing so. This argument is based upon a provision in the HRMPA Agreement, in which HRMPA agreed to pay HRM *actual* costs for administering HRMPA; HRM was required to make regular reconciliations between the amounts paid by HRMPA, and the actual expenses incurred by HRM. The Liquidator alleges these reconciliations were not performed in a meaningful way. She argues that HRMPA Officers and Directors, in the absence of any meaningful reports, breached their fiduciary duties by allowing HRMPA to pay fees that were 50% greater than what Oxford paid, without HRM showing any connection between the greater fees and its actual costs of administering Healthchoices. The Liquidator alleges that "during their respective tenures, the Defendants, as HRMPA's officers and/or directors, knew or should have known that the management fees were grossly excessive and disproportionate to the fair market value of services that HRM provided . . . ." (Amended Complaint at 15, ¶ 63).

The Liquidator also alleges that the Defendants approved substantial payments from HRMPA to HRM that were not, in any matter, related to fees associated with the HRMPA agreement. She asserts that

in 2000, HRM "transferred funds between its accounts and HRMPA's accounts at will ... [using] these ill-gotten funds to bolster other of its subsidiaries, to fatten its own revenues ... and to satisfy HRM's corporate obligations." (Amended Complaint at 16–17, ¶ 69). She further alleges that HRMPA transferred $8.5 million to HRM, in excess of HRM's charges to HRMPA, charges that the Liquidator has previously alleged were themselves exorbitant. She maintains that HRMPA's Officers and Directors breached their fiduciary duties to HRMPA by failing to pay attention to HRMPA's finances, thus, allowing these transfers to occur. The Liquidator also alleges that "the Combination of excessive management fees and additional 'extra-contractual' transfers proved to be devastating to HRMPA. The aforesaid Defendants knew or should have known that [HRMPA] could not withstand such an overwhelming depletion of capital." (Amended Complaint at 18, ¶ 73).[6]

Based upon these excessive fees and extra-contractual transfers, the Liquidator argues the following breaches were committed by the individual Officers and Directors of HRMPA:

84. It is clear that the Defendants' collective and individual failure to observe their fiduciary responsibilities led to the collapse of the HMO. Throughout HRMPA's existence, the Defendants quite simply ignored or neglected the fact that each of them owed a duty of undivided loyalty to HRMPA. Worse still is the fact that each of the Defen-

dants, through conscious action, neglect, reckless disregard and/or incompetence, acted solely in the interests of HRM, all at the expense and to the detriment of HRMPA.

85. HRMPA's Board of Directors and corporate officers were dominated by Defendants who also served on the Board or as an officer of HRM. Some officers and/or directors of HRMPA simultaneously served as officers and/or directors of HRM or maintained other interests in HRM while they acted on decisions involving both entities. Such Defendants included at least Clark, Kimpbell, Kuehni, LeBlanc, McIlroy, Price, Rosa, Travis, and Montgomery.

\* \* \* \*

91. The directors and officers of HRMPA recklessly allowed HRMPA to be controlled in all material respects by HRM and transfer substantially all of HRMPA's profits and revenues to HRM for HRM's control, use, disposition and/or benefit, notwithstanding that they were on notice that such allowance and transfers would cause significant harm to HRMPA, and Defendants who served in such capacities during such time breached their fiduciary duty thereby.

(Amended Complaint at 20–21). Based upon these allegations, the Liquidator asserts the following counts in the D & O Action Amended Complaint: 1) Breach of Fiduciary Duty; 2) Civil Conspiracy; 3) Professional Negligence;[7] and 4) Statuto-

---

6. The Liquidator argues that subsequent efforts were made by HRMPA to characterize these funds as various types of loans that HRMPA had given to either HRM or its subsidiaries, but notes that no legal documents were issued at the time of the fund transfers displaying any obligation on behalf of HRM or its subsidiaries to repay to HRMPA the transferred funds.

7. The professional negligence claim is directed against Defendants Clark and Kuehni who served respectively as Chief Financial Officer and Secretary/Treasurer of HRMPA and relates to their purported negligence in failing to prevent the questionable financial transactions involving the administration fees and the payments made for no services.

ry Voidable Transfers. With this factual background in mind, we now move to an examination of the case *sub judice* in which the parties seek declaratory judgment relief.

*Declaratory Judgment Action as to Defendants' Coverage under D & O Policy issued by TIG*

■ Before the court is an action for a Declaratory Judgment filed by TIG in which it seeks a declaration that the D & O Policy it issued to HRM, which also covered the Directors and Officers of HRMPA, does not require it to provide coverage to the Directors and Officers of HRMPA in the D & O Action filed by the Insurance Commissioner in her role as the Statutory Liquidator. The record discloses that HRM had purchased a D & O policy from TIG and that the policy also covered actions against Directors and Officers of HRM subsidiary corporations, such as HRMPA.[8] Several of the Directors and Officers expressed to TIG their intent to give notice of claims under the D & O Policy as a result of the Liquidator's D & O Action. TIG then initiated the instant declaratory judgment action to determine

8. The policy provides that:

THIS IS A CLAIMS–MADE AND REPORTED POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Notice: This Policy, subject to all of its terms, conditions, definitions, exclusion, limitations, and endorsements, applies only to any Claim first made against the Insured and reported in writing to us during this Policy Period. The Limit of Liability available to pay Loss shall be reduced by amounts incurred as Defense Expenses. This Policy does not provide for any duty by us to defend any Insured.

I. INSURING AGREEMENT

Subject to the Limit of Liability, we shall pay all Loss which the Insured is legally obligated to pay arising solely by reason of any Wrongful Act on or after this Policy Retroactive Date alleged in a Claim first made against the Insured and reported in writing to us during this Policy Period.

A. We shall pay on behalf of each Insured all Loss for which the Insured is not indemnified by the Company which the Insured becomes legally obligated to pay because of any Claim first made against the Insured, individually or otherwise, during this Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured after the Policy Retroactive Date as shown in item 7 of the Declarations.

B. We shall pay on behalf of the Company all Loss for which the Company grants indemnification to each Insured, as permit-ted or required by law, which the Insured becomes legally obligated to pay because of any Claim first made against the Insured, individually or otherwise, during this Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted by such Insured after the Policy Retroactive Date as shown in Item 7 of the Declarations.

(D & O Policy). The term "Company" is defined as "1. The Parent Company; 2. Any Subsidiary of the Parent Company which existed at the Policy Retroactive Date." The term "Insured" is defined as:

[A]ny person who after the Policy Retroactive Date is one of the following:

1. A duly elected Director of the Company;

2. A duly elected or appointed Officer of the Company;

3. The estate heirs or legal representatives of any deceased Director [or] Officer of the Company who was a Director or Officer of the Company at the time of the Wrongful Act upon which an insurable Claim is based; or

4. The legal representative of any Director or Officer of the Company in the event of his or her incompetency, insolvency, or bankruptcy.

*Id.* (emphasis removed). The term "Wrongful Act" is defined in the Manuscript Endorsement as "any actual or alleged breach of duty, error, misstatement, misleading statement, or omission done or attempted by the Insured in the capacity as director or officer of the Company." (Manuscript Endorsement of D & O Policy).

its responsibilities under the D & O policy.[9]

In this Declaratory Judgment Action, TIG has asked the Court to determine whether an exclusion provision within the D & O Policy precludes coverage of the Directors and Officers in the D & O Action. TIG, as well as several Directors and Officers, filed motions for judgment on the pleadings which are currently before the Court.

The exclusion provision of the policy provides that:

> This insurance does not apply to any Claim made against any Insured arising out of any of the following:
>
> I. *Any Claim brought by, on behalf of or at the behest of the Company,* **its successor,** its assignee, its trustee in bankruptcy, its debtor-in-possession, or its litigation trustee.... **However, this exclusion shall not apply to:**
>
> \* \* \* \*
>
> 2) **derivative suits brought or maintained on behalf of the Company by one or more persons who are not Insureds and who bring and maintain the Claim without solicitation, assistance or active participation of the Company or any Insured....**

(TIG Policy at Manuscript Endorsement No. 4) (emphasis added). The parties raise a number of arguments relating to this exclusion.

■■■ In its motion, TIG argues that the Liquidator is a "successor" to HRMPA, and, therefore, coverage is precluded by the plain language of subsection I.[10] Directors and Officers[11] argue in their

---

9. Declaratory Judgment is an appropriate means for parties to an insurance contract to have the court evaluate and determine the rights and responsibilities between the parties arising from the contract. *Consulting Engineers, Inc. v. Insurance Co. of N.A.,* 710 A.2d 82, 84 (Pa.Super.1998), *affirmed per curiam,* 560 Pa. 247, 743 A.2d 911 (2000).

10. TIG raises two secondary issues. First, TIG argues that the D & O Policy provides no coverage to Defendant Kimpell, based upon the statement in her responsive pleading in the Liquidator's action at 594 M.D.2002, that she was neither a director nor an officer. Second, TIG argues that the Court should dismiss the Defendant's counterclaims.

Several of the Directors and Officers also have sought damages for breach of contract, arising from TIG's failure to provide coverage. Additionally, Defendant Borst has brought a counterclaim alleging bad faith.

11. Three sets of Defendants filed motions for judgment on the pleadings. The first motion was submitted jointly by Borst, Kimpell, McIlroy, Mitrane, Montgomery, Price and Travis. Defendant Friedman subsequently joined this motion, as did Defendant LeBlanc. Defendants Leland and Kuehni submitted a joint

motion which is word-for-word identical to the motion submitted by Borst *et al.* For convenience, we refer to the Borst *et al* motion and the identical motion of Leland and Kuehni as the "Borst motion." Borst raises five (or six, if (f) is added) primary arguments:

> (a) the exclusion is unambiguous and does not include actions brought by the statutory liquidator; (b) in the alternative, the exclusion is ambiguous where the parties set forth in the exclusion (the Company, its successors [sic], assigns, trustee in bankruptcy, debtor in possession, or litigation trustee) are not inclusive of or defined to include a statutory liquidator; (c) the terms of the Policy must be construed against TIG as the drafter; (d) TIG knew or should have known that HRM was an HMO and subject to regulation and enforcement by an insurance commissioner, including the insurance commission[er] acting as a statutory liquidator; (e) by failing to specifically provide that the action brought by a statutory liquidator is excluded, TIG should be precluded from denying coverage; and/or (f) the Policy be read to cover both defense expenses and indemnity for the Moving Defendants who are alleged to be officers and/or directors of HRMPA in the Statutory Liquidator's Action."

motions that the plain language of the exclusion clearly allows for insurance coverage in the D & O Action because the exclusion does not specifically include the term "liquidator." Alternatively, Defendants argue that the exclusion is ambiguous as to whether the Liquidator is a "successor," and that under rules of insurance contract interpretation, ambiguities are interpreted against the drafter and in favor of coverage. We address TIG's and Defendants' arguments in turn.[12,13]

## DISCUSSION

The central issue here is whether the D & O Policy exclusion precludes coverage for the claims made in the Liquidator's D & O Action. The answer is governed by principles of contract interpretation.

 In cases involving the interpretation of insurance contracts, the insurer bears the burden of establishing that a policy exclusion precludes coverage. *Madison Construction Company v. Harleysville Mutual Insurance Company*, 557 Pa. 595, 605, 735 A.2d 100, 106 (1999). In determining whether an insurer has met its burden, "we rely on well-settled principles of contract interpretation." *Id.* Under basic principles of contract interpretation:

A contract must be construed according to the meaning of its language. The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. The Court's inquiry should focus on what the agreement itself expressed and not on what the parties may have silently intended. It is not proper, under the guise of construction, to alter the terms to which the parties, whether in wisdom or folly, expressly agreed. The law assumes that the parties chose the language of their contract carefully.

*Empire Sanitary Landfill, Inc. v. Riverside School District*, 739 A.2d 651, 654 (Pa.Cmwlth.1999) (citations and internal quotations omitted). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Company v. Empire Insurance Company*, 503 Pa. 300, 305, 469 A.2d 563,

---

(Borst Motion, ¶ 11).
Defendant Campion also filed a motion for judgment on the pleadings, arguing that she was entitled to coverage under the agreement. Additionally, the Liquidator has submitted a Brief in Opposition to TIG's Motion.

12. Initially, we note that the parties differ as to which state's laws apply to this action. TIG argues that Minnesota law should apply because the TIG policy was issued to HRM, a Minnesota company. Defendants maintain that Pennsylvania law should apply, as the law of the forum, because there is no conflict between the applicable Pennsylvania and Minnesota law. We agree with Defendants. In determining which state's law applies, we must first determine if an actual conflict exists between the laws of two states. *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695 (Pa.Super.2000). If there is no conflict, then

the law of the forum applies. *Ratti.* In the instant case, all parties agree that the relevant laws of Pennsylvania and Minnesota are not in conflict. As none of the parties have shown a conflict between the relevant laws of the two states, and because we have not found a conflict, we apply Pennsylvania law.

13. In reviewing a motion for judgment on the pleadings, the court must accept all factual allegations of the non-moving party as true, and only those facts that a non-moving party has specifically admitted can be considered against that party. *Parish v. Horn*, 768 A.2d 1214, 1215 n. 1 (Pa.Cmwlth.2001), *affirmed*, 569 Pa. 45, 800 A.2d 294 (2002). The court should enter judgment for the moving party where the pleadings demonstrate no genuine issues of material fact and the party is entitled to judgment as a matter of law. *Id.*

566 (1983). A policy provision is ambiguous:

> [I]f and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and *a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.*

*Commonwealth State Highway and Bridge Authority v. E.J. Albrecht Company,* 59 Pa.Cmwlth. 246, 430 A.2d 328, 330 (1981) (quoting 8 P.L.E. Contracts 146 (1971)) (emphasis added). "We will not distort the meaning of the language, or resort to a strained contrivance in order to find an ambiguity." *Madison Construction,* 557 Pa. at 606, 735 A.2d at 106. "Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Standard Venetian Blind,* 503 Pa. at 305, 469 A.2d at 566.

▆▆ In arguing that coverage is precluded, TIG relies upon language in the exclusion that states that the insurance policy "does not apply to any Claim made against any Insured arising out of . . . Any Claim brought by, on behalf of or at the behest of the Company, its *successor,* its assignee, its trustee in bankruptcy, its debtor-in-possession, or its litigation trustee." (TIG Policy at Manuscript Endorsement No. 4) (emphasis added). TIG relies upon the plain meaning of the term "successor" and the effect of The Insurance Department Act of 1921,[14] (Insurance Act), to the extent that it transfers title in the liquidated assets from the company to the Liquidator, to argue that the Liquidator is a successor to HRMPA. TIG argues that the term " 'successor' is an ordinary English word that has only one reasonable interpretation in this context." (TIG's Brief in Support of its Motion for Judgment on the Pleadings at 13). It relies on definitions for "successor" supplied by a legal dictionary, an English Language dictionary, and the Pennsylvania Rules of Civil Procedure to argue that the plain meaning of "successor" is "one who succeeds another." Further, noting that Section 520(c) of the Insurance Act, 40 P.S. § 221.20(c),[15] transfers to the Liquidator by operation of law, title to all of the liquidated corporation's assets, TIG argues that under this provision, the Liquidator "succeeds" HRMPA due to the transfer of assets and authority.

In her response to TIG's motion, the Liquidator argues that the term "successor" requires the successor to be of like character. The Liquidator argues that she is of a different character because she does not act in the sole interest of the company as would a true successor to a corporation, but rather acts to protect the interest of creditors and the Commonwealth as a whole.[16] Additionally, the Liquidator

---

**14.** Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 1–324.13.

**15.** This Section was added by Section 2 of the Act of December 14, 1977, P.L.280.

**16.** In protecting the rights of creditors, the Liquidator notes that she has authority in excess of what the liquidated corporation had

prior to its liquidation. In particular, the Liquidator notes that she has authority:

> (5) To hold hearings, to subpoena witnesses, to compel their attendance, to administer oaths, to examine any person under oath, and to compel any person to subscribe to his testimony after it has been correctly reduced to writing, and in con-

notes that the transfer of authority is not self-executing because Section 522 of the Insurance Act, 40 P.S. 221.22,[17] requires her first to obtain permission from the Commonwealth Court before dissolving a corporation, whereas a Board of Directors could do so under its own authority. Thus, the Liquidator argues that because a successor must maintain like character to the organization it succeeds, and since the Insurance Act imposes on the Liquidator duties and authority different from those of the corporate board, she is not of like character to the HRMPA board and is not, therefore, a successor.

Defendant Borst raises arguments similar to those of the Liquidator, but also raises a plain language argument, noting that since the exclusion does not include the specific term "liquidator," actions by the Liquidator were not intended to be excluded.

 In addressing these arguments, we note that the D & O Policy does not define the term "successor." TIG correctly notes that when words are undefined within an insurance policy, "[w]ords of common usage are to be construed in their natural, plain, and ordinary sense, and [a reviewing court] may inform [its] understanding of these terms by considering their dictionary definitions." *Madison Construction.* Accordingly, since "successor" is a word of common usage, consideration of its dictionary definitions and other sources is appropriate.

Both legal and English dictionaries, as well as the Pennsylvania Rules of Civil Procedure, contain similar definitions for the term "successor." Black's Law Dictionary defines "successor" as "One that succeeds or follows; one who takes the place that another has left, and sustains the like part or character." Black's Law Dictionary 1431 (6th ed. 1990). The American Heritage Dictionary offers a similar definition: "One that succeeds another." American Heritage Dictionary of the English Language, 1728 (4th ed. 2000). This same dictionary defines "succeed" as "to come after and take the place of." *Id.* The Rules of Civil Procedure define "successor" as "Anyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa. R.C.P. No. 2351. Common to all these definitions is the concept that, by assuming the interests of another, one takes the other's place.

The statutory language of the Insurance Act supports TIG's argument. Section 520 of the Insurance Act, upon which TIG relies, provides that:

> (c) An order to liquidate the business of a domestic insurer shall appoint the commissioner and his successors in office liquidator and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the orders of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the date of the filing of the

---

nection therewith to require the production of any books, papers, records or other documents which he deems relevant to the inquiry.

\* \* \* \*

(11) To affirm or disavow any contracts to which the insurer is a party.

\* \* \* \*

(23) [As well as] to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or expedient for the accomplishment of or in aid of the purpose of liquidation.

40 P.S. § 221.23.

**17.** This Section was added by Section 2 of the Act of December 14, 1977, P.L. 280.

petition for liquidation. He may recover and reduce the same to possession.

TIG notes that the Insurance Act strips the insurer ordered to be liquidated of any power to bring suit, instead granting that power to the Liquidator alone. Section 526(a) of the Insurance Act, 40 P.S. § 221.26(a).[18] Under the terms of Section 520(c), the Liquidator *takes the place* of the insurer, because the statute transfers all "property, contracts and rights of action" from the insurer to her. The same statutory section requires this Court, when issuing orders of liquidation, to "direct the liquidator forthwith to take possession of the assets of the insurer ordered liquidated and to administer them under the orders of the court." *Id.* Pursuant to this statutory directive, this Courts liquidation order in the instant case "vested [the Liquidator] with title to all property, assets, contracts of rights of action of HRMPA, of whatever nature and wherever located, whether held directly or indirectly, as of the date of the filing of the Petition for Liquidation." (No. 407 M.D. 2001, September 20, 2001 Order.) These provisions from the Insurance Act are consistent with the definitions set forth for the term "suc-

cessor." The Liquidator, "by operation of law [has] succeeded to the interest" and "rights [and] responsibilities" of the insurer. Accordingly, the Liquidator can be considered, for the purposes of the DO insurance policy, to come within the meaning of the term "successor."[19]

The Liquidator argues that, although she acts on behalf of the insurer ordered liquidated, she also acts on behalf of the creditors of the insurer, and this function prevents her from being a successor to the insurer. In support of this argument, she cites several cases in other jurisdictions as examples of other courts' determinations that the regulating agency, when acting as a receiver, did not step into the shoes of the company because it represented interests outside the organization, such as creditors and depositors. *See, e.g., Fidelity and Deposit Company v. Zandstra,* 756 F.Supp. 429, 432 (N.D.Cal.1990) (involving the Federal Deposit Insurance Company (FDIC)). In *Zandstra,* a savings and loan association brought two actions against several former officers and/or directors of the association. Subsequently, the Federal Savings and Loan Insurance Corporation (FSLIC) was appointed receiver of

---

**18.** This Section was added by Section 2 of the Act of December 14, 1977, P.L. 280.

**19.** The Liquidator and the Officers and Directors also argue that successor necessarily refers only to a "corporate" successor, noting that the definition from the 6th Edition of Blacks Law Dictionary contains the phrase "like character." However, the 7th edition of Black's has deleted the phrase from its definition. It provides that "A person who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows another." Black's Law Dictionary 1446 (7th Ed. 1999). Given this removal of the phrase from the definition, and given that neither the general dictionaries nor the Civil Rules contains language requiring a successor to maintain identical structure, identity and form to the entity to which it succeeds, we do not read this requirement into the definition.

We do note that both the 6th and 7th editions of Black's Law Dictionary offer an alternative definition for successor: "A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary 1448 (7th Ed. 1999). The 6th edition's alternative definition provided that "[W]ith reference to corporations, *generally* means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first corporation." Black's Law Dictionary 1431 (6th Ed. 1990) (emphasis added). A successor may be corporate in nature, but that is not a requirement. This latter definition uses the word "generally" which indicates that a successor need not necessarily be a corporation.

the association, and it "took possession of [the association] and all of its assets and liabilities and succeeded to the rights, titles, powers and privileges of [the association]." *Id.*, 756 F.Supp. at 430. The FDIC continued the two actions that the association had brought. Fidelity and Deposit Company of Maryland, an insurance company that previously issued DO liability insurance to the association, initiated a declaratory judgment claiming that, under what is referred to as an "insured v. insured" exclusion in the policy,[20] it had no obligation to provide coverage in the suit being maintained by the FDIC. The court disagreed, concluding that the FDIC was "entitled to attempt to recover [the] loss not only as a stand-in for [the association], but [also] to protect the creditors, depositors, and shareholders." *Id.*, 756 F.Supp. at 433. Accordingly, the court found the exclusion not applicable. Applied to the instant case, the Liquidator argues that this case stands for the proposition that a regulatory agency is not a successor to the original corporation.

The *Zandstra* case is significantly different from the instant one; of particular importance is the language of the policy exclusion used in that case. The exclusion provided that:

> It is understood and agreed that the Company [Fidelity] shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers by any other Director or Officer of the Association [Homestate] or by the Association, except for a shareholders' derivative action by a shareholder of the Association, when such shareholder is not a Director or Officer of the Association.

*Zandstra*, 756 F.Supp. at 430. In contrast to the exclusion in the present case, the exclusion in *Zandstra* did not contain any language referring to any successor and, thus, did not explicitly preclude coverage in suits brought by the associations successor. The court, in *Zandstra*, acknowledged the absence of such specific language, noting that the exclusion did not "include language which would indicate an intent to include [the associations] successors." *Id.*, 756 F.Supp. at 433. The implication is that the result would have been different had such language been included. Similarly, in the other FDIC cases cited by the Liquidator, the language of the exclusion did not include the word "successor" or an equivalent term.[21] Accordingly, these cases do not address the issue of whether a regulatory agency can be considered to function as a successor when

---

**20.** Borst argues extensively as to the history and rationale for the "insured v. insured" exclusion. However, the exclusion language at issue here is different than in *Zandstra* and the other cases, because it includes the term successor, and so this case presents a situation unique and not analogous to these "insured versus insured" cases discussed by Borst.

**21.** The Liquidator also cites to *Branning v. CNA Insurance Companies*, 721 F.Supp. 1180 (W.D.Wash.1989) for the proposition that the FDIC does not stand in the shoes of the liquidated corporation. The exclusion there provided that, "The Insurer shall not be liable to make any payment for Loss ... which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution ... except for a shareholders derivative action brought by a shareholder of the institution other than an Insured." *Branning*, 721 F.Supp. at 1184. Like the court in *Zandstra*, the court in *Branning* concluded that this exclusion language did not prevent coverage as to a suit brought by the FSLIC, noting that since the exclusion "does not exclude claims brought on behalf of shareholders, creditors, and the insurance fund, FSLIC's claims are covered. To rule otherwise would frustrate the purpose of the agency as well as its ability to revive failed savings and loans." *Id.*

that term is used in an exclusion provision.[22]

Persuasive authority from this Court supports the conclusion that the Liquidator can be considered to succeed the insurer under these circumstances. We have noted that when an insurance company is placed in liquidation, the Liquidator "steps into the shoes of the insurer," thereby "enforc[ing] the rights of the company and other interested individuals." *Foster v. Monsour Medical Foundation,* 667 A.2d 18, 20 (Pa.Cmwlth.1995)(single judge opinion by J. Pellegrini). Additionally, the Court has used the term "successor" to define the Liquidators role, noting that the Liquidator is the "management *successor* to the former directors and officers of [the Insurance Company]". *Maleski v. Corporate Life Insurance Company,* 163 Pa.Cmwlth. 36, 641 A.2d 1, 4 (1994) (single judge opinion by Pellegrini, J.). This transfer of authority as "management successor" is near absolute, providing the Liquidator with authority and discretion to exercise such important rights as the attorney-client privilege "with respect to confidential pre-liquidation communications" that had belonged to the now defunct insurer. *Id.* More recently, we again used the term "successor" to identify the Liquidators relationship to the insurer. *Koken v. Legion Insurance Company,* 831 A.2d 1196 (Pa.Cmwlth.2003) (single judge opinion by Leavitt, J.). Although the case involved issues arising from the *rehabilitation* of an insurance company, in dicta, the Court referred to both the Rehabilitator and the Liquidator as "statutory successor[s]". *Id.* at 1238–1239. The Court noted that:

> [A] statutory successor is not a third-party to the contract but, rather, a party to the contract with rights that are "not superior to nor more extensive than those of the carrier whose affairs he is liquidating." Because the rights of the Rehabilitator, or the liquidator (in the event of the [insurance company's] liquidation), are identical to the [insurance company's rights], it does not follow that the Policyholder Interveners and their reinsurers intended to grant third-party beneficiary rights to Legions statutory successor. It would be redundant to recite what will happen by operation of law.

*Id.* (citations omitted). Thus, although not binding, previous holdings of our Court consistently have acknowledged that the Liquidator functions as a successor to the insurer.

Accordingly, because the definitions do not require that a successor must *necessarily* maintain the same structure as the

---

**22.** The Liquidator also argues that the intent underlying "insured v. insured" exclusions is not served by barring claims made by the statutory liquidator because the intent is to prevent collusive suits, which the D & O Action is not. However, in discussing the intent underlying generic "insured v. insured" exclusions, she does not reference the fact that the specific exclusion in this case is *not* the generic exclusion: unlike those she discusses, this exclusion specifically references a successor, including the trustee in bankruptcy. A trustee in bankruptcy can look out for the interests of creditors. Actions brought by a trustee in bankruptcy also would not be collusive between the company and its directors and officers, and yet would be excluded under the specific language of this exclusion. Thus, the specific language of this exclusion does not support the Liquidator's argument on intent. We note further that this Court has stated that "[u]nder the Act, the Statutory Liquidator performs functions similar to the trustee in liquidations under the Bankruptcy Code." *Maleski v. Corporate Life Insurance Company,* 163 Pa.Cmwlth. 36, 641 A.2d 1, 4 (1994) (single judge opinion by Pellegrini, J.). The Liquidator has functions of a successor and of a trustee in bankruptcy and these functions are within the language of the exclusion.

original entity, as long as the successor succeeds to the assets and rights of the original entity, and because the statute and persuasive precedent both clearly establish by operation of law such a transfer between the insurer to be liquidated and the Liquidator, we hold that the Liquidator can function as a type of successor under the plain meaning of the term in the insurance policy exclusion.

In addition to the plain meaning of the terms used, the parties each also argue that the context of the term "successor" supports their position, and each cites a Latin maxim to be applied for this purpose.

TIG argues that the principle, *noscitur a sociis* ("a word is known by the company it keeps"), is applicable. *See, e.g., Northway Village No. 3, Inc. v. Northway Properties, Inc.,* 430 Pa. 499, 244 A.2d 47 (1968) (applying this rule of statutory construction to the interpretation of contracts). With this principle, the court establishes the particular meaning of a general term by looking to the more specific terms used in proximity to it. *See, e.g., Mountain Village v. Board of Sup'rs, Longswamp Twp.,* 828 A.2d 411, 413–14 (Pa.Cmwlth. 2003) (determining that the phrase "municipality's professional consultants," when used after reference to "Engineer, Land Surveyor and Geologist refer[s] to members of technical, scientific occupations" and not to attorneys). Applying this principle here, the words that follow "successor" in the provision, "assignee," "trustee in bankruptcy," "debtor-in-possession" and "litigation trustee," clarify that the parties meant successor to be any entity that replaces the company and stands in its shoes, whether voluntary ("assignee") or involuntary ("trustee in bankruptcy"). As to the involuntary successors, the terms

address successors arising from the insolvency of the corporation.[23]

Defendants, instead, argue that the principle, *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other), is applicable. *Department of Transportation v. Mosites Construction Company,* 90 Pa.Cmwlth. 33, 494 A.2d 41, 43 (1985) (finding the rule of statutory construction that "the mention of particular items implies the purposeful exclusion of other items of the same general character" is also applicable to ascertaining the intent of parties to a contract). Defendants note that the insurance policy exclusion identifies five specific entities whose claims against any Insured are not covered: (1) successor; (2) assignee; (3) trustee in bankruptcy; (4) debtor-in-possession; (5) or its litigation trustee. Defendants argue that if we adopt TIG's interpretation, the insurance policy exclusion need have only read "successor" since each of the four entities named thereafter are forms of successors. Thus, giving the term "successor" TIG's proposed broad and inclusive meaning would render these subsequent terms redundant. Defendants maintain that such an interpretation would run afoul of the principle of contract interpretation that no word within a contract is to be interpreted as being mere surplusage. Accordingly, Defendants argue that because the policy specifically includes specific "successors," it necessarily precludes any other "successors" not specifically included.

█ We are not persuaded by Defendants argument. The inclusion of several forms of involuntary successors arising from insolvency does not necessarily mean that the policy's failure to specifically identify the Statutory Liquidator removes her from the exclusion under the *expressio*

---

23. Each of the three terms other than "assignee" relate to bankruptcy proceedings.

*unius est exclusio alterius* language. *See L.B. Foster Co. v. Southeastern Pennsylvania Transp. Authority,* 705 A.2d 164 (Pa.Cmwlth.1997). Further, applying this principle to its logical conclusion would render the term "successor" itself surplusage. We decline to apply a principle when application would frustrate the plain meaning of the language used.

TIG has, thus, met its burden of establishing that the policy exclusion precludes coverage.[24]

The Liquidator raises several additional arguments. First, although she acknowledges the validity of exclusions involving regulatory receivers, she argues that the terms used in the policy exclusion at issue are insufficient to preclude coverage here. She contends that TIG should have used a regulatory exclusion and cites this one:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to: any action or preceding brought by or on behalf of any national or state regulatory agency, including any type of legal action which such agency has the legal right to bring as receiver, conservator, liquidator or otherwise, whether such action or preceding is brought in the name of such agency or by or on behalf of such agency in the name of any other entity or solely in the name of any Third Party.

(Brief of M. Diane Koken, as Statutory Liquidator of HRM Health Plans (PA), Inc., in Opposition to Motion for Judgment on the Pleadings of TIG Specialty Insurance Company, p. 25, n. 2) (quoting Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 20.02[d] at 923 (9th Ed. 1998)). Although it would have perhaps been clearer for TIG to use some of this language in the policy exclusion at issue, the Court will not penalize parties for using one choice of words when it could have used a "better" choice of words—the Courts responsibility is to effectuate the intent of the parties as manifested by the terms of the policy language. While the Court may not read into language to find a meaning clearly not intended, neither can we ignore the clear impact of the words chosen. As discussed, Liquidator falls within the definition for successor.

The Liquidator also argues that public policy considerations militate in favor of finding coverage. She notes that it is her responsibility to recover assets and that a finding that there is insurance coverage furthers the goal of obtaining payment to the liquidated company's creditors. Borst raises the same argument, noting that it will be HRMPA's creditors, and not HRMPA, that benefit from a verdict in favor of the Liquidator. However, in an instance such as this one, involving a form of insurance coverage not required by Pennsylvania law, public policy cannot be a means to find coverage that is not there. The potential difficulty in recovering assets directly from the purported perpetrators, cannot, in the name of public policy, be used to eviscerate an otherwise valid exclusion.

 Having concluded that TIG met its burden in establishing the applicability of the exclusion, the Liquidator and the Directors and Officers bear the burden of establishing the applicability of any exception to this exclusion. The Directors and Officers argue that paragraph two (2) of the exclusion presents an exception that

---

**24.** Given the conclusion that the plain meaning of the exclusion precludes coverage, the Defendants' argument that the exclusion is vague necessarily fails.

prevents application of the exclusion.[25] Paragraph (2) provides that:

[T]his exclusion shall not apply to:

\* \* \* \*

2) derivative suits brought or maintained on behalf of the Company by one or more persons who are not Insured and who bring and maintain the Claim without solicitation, assistance or active participation of the Company or any Insured. . . .

(TIG Policy at Manuscript Endorsement No. 4.) The Directors and Officers argue that the D & O Action is akin to a derivative suit because it is being brought by the Liquidator who is not insured, and because the Liquidator acts without assistance or involvement of the Company or any Insured. If the D & O Action falls within this exception, the policy would provide coverage to the Directors and Officers.

In support of this argument, Defendant Campion cites *Tyler v. O'Neill*, 994 F.Supp. 603 (E.D.Pa.1998) for the proposition that a derivative suit is one that "addresses a wrong done to the corporate entity rather than an individual shareholder." (Briefs of Defendants Campion and Friedman in Response to TIG's Motion for Judgment on the Pleadings at 9 and 8 respectively.) TIG argues that the D & O Action is not a derivative suit; HRMPA has no shareholders, and the exclusion is for shareholder derivative suits.

This exception sets out three requirements: 1) the action must be derivative, brought or maintained on behalf of the company, 2) brought by persons who are not insured; and 3) without solicitation, assistance or active participation of the company or any Insured. Therefore, even if the D & O Action is considered derivative (a determination that this Court is not making), and the Liquidator is not an insured, in order to come within the exception, the action must have been brought *without the assistance or involvement of the company.* As previously discussed, by law and court order, the Liquidator has been vested with all of the company's property rights, including contract rights, as well as the company's power to sue and be sued. The Liquidator stands in the shoes of the company, and is the "management successor to the former directors and officers of [the company]". *Maleski,* 641 A.2d at 4. A company acts through its management and, since the Liquidator takes the place of the management, any action she brings is, in effect, brought with the assistance and participation of the company. Thus, the D & O Action does not come within the exception.

Although we are aware that the absence or presence of a valid D & O policy may have pragmatic implications as to the feasibility of recoupment of lost assets of an insurer in liquidation, the existence of such a policy has no legal bearing on the underlying statutory authority that authorizes the Liquidator to proceed with such an action.

For these reasons, we grant judgment in favor of TIG.[26] The Directors and Officers'

**25.** Defendant Campion's motion is premised entirely on this issue.

**26.** Because we find no coverage for all of the Directors and Officers, we need not address whether any specific Director or Officer had coverage. Additionally, we deny Borst's Claim for bad faith. Bad faith requires a showing that the insurer lacked a reasonable basis to deny coverage. *Bergman v. United Services Auto. Association,* 742 A.2d 1101, 1106 (Pa.Super.1999). Given our determination that TIG's denial of coverage was appropriate, the bad faith claim necessarily fails. Additionally, as TIG was not required to provide coverage under the contract, the breach of contract claims must also fail.

counterclaims for declaratory relief establishing coverage are denied.

### ORDER

**NOW,** July 8, 2004, the Motion for Judgment on the Pleadings filed by TIG is granted. All other motions for judgment on the pleadings are denied.