**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**John ZANDSTRA, et al., Defendants.**

**Federal Deposit Insurance Corporation, Defendant–Intervenor.**

**And Related Counterclaim.**

**No. C–89–1258 WWS.**

United States District Court, N.D. California.

Feb. 8, 1990.

Martin J. O'Leary, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., Alan E. Friedman, Gordon A. Goldsmith, Tuttle & Taylor, Los Angeles, Cal., for plaintiff.

Craig S. Meredith, Farella, Braun & Martel, Daniel J. Furniss, David C. MacPherson, Khourie, Crew & Jaeger, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

SCHWARZER, District Judge.

This is an action for declaratory relief, brought by a Maryland insurance company, Fidelity and Deposit Company of Maryland ("Fidelity"), which seeks a declaration that it has no duty to defend or indemnify the defendants, John Zandstra, Robert Sederstrom, Jr. and Richard Webster (collectively, "the Zandstra defendants"), citizens of California and Washington, against two actions originally brought against them by Homestate Savings and Loan Association ("Homestate") and now being maintained by the Federal Deposit Insurance Corporation ("FDIC"). FDIC has been granted leave to intervene as a defendant. Jurisdiction is based upon diversity and upon 12 U.S.C. § 1819(b)(2) as amended by Pub.L. 101–73 § 209(b)(2), 103 Stat. 183 at 216–17.

Fidelity issued a directors' and officers' liability policy (the "D & O policy") to Homestate. Zandstra, Sederstrom, and Webster are former officers and/or directors of Homestate. They are named in

two actions originally brought by Homestate. They have tendered the defense of these actions to Fidelity; Fidelity has refused to defend, and brought this action.

Fidelity now moves for summary judgment on the basis of an endorsement to the D & O policy which excludes from coverage losses connected with claims made against the directors or officers by Homestate. The Zandstra defendants and FDIC oppose the motion, contending that FDIC represents interests other than Homestate's in the underlying actions, and that the exclusion is ambiguous as applied to actions maintained by FDIC.

## Factual Background

In September 1982 Fidelity issued to Homestate a directors' and officers' liability insurance policy which was renewed and continued in force until March 1986. The policy contained an exclusion (the "insured v. insured" exclusion) which provided:

> It is understood and agreed that the Company [Fidelity] shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers by any other Director or Officer of the Association [Homestate] or by the Association, except for a shareholders' derivative action by a shareholder of the Association, when such shareholder is not a Director or Officer of the Association.

Buckley dec. ex. A.[1]

In June 1986, Homestate filed two actions against Zandstra in state courts in Hawaii and California (the "underlying actions"). Sederstrom and Webster were later added as defendants in the California action. The parties do not appear to dispute that Fidelity was timely notified of the actions, and that, except for any applicable exclusions, the D & O policy would provide coverage.

On August 26, 1988 the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of Homestate, pursuant to 12 U.S.C. §§ 1464(d)(6)(A), 1729(c)(1)(B). FSLIC/Receiver took possession of Homestate and all of its assets and liabilities and succeeded to the rights, titles, powers and privileges of Homestate, its members, directors, and officers. 12 U.S.C. § 1729(c)(1)(B)(i)(II); 12 C.F.R. §§ 547.7, 549.3. On the same day, pursuant to 12 U.S.C. §§ 1729(a), 1729(f)(2)(A), FSLIC/Receiver entered into a "purchase and assumption" agreement by which it sold most of Homestate's assets to Old Stone Bank of California ("Old Stone"). (Skilling June 19, 1989 dec. [in action 88–3757–WWS] ex. F.) In this agreement, Old Stone agreed to assume most of the liabilities of Homestate. FSLIC/Corporate provided more than $5 million in assistance to Old Stone to help it meet these obligations. (Stanton June 19, 1989 dec. ¶ 4.) This agreement provided that FSLIC/Receiver retained any claims against directors and officers of Homestate.[2] Also on the same

---

1. For purposes of this motion it is unnecessary to decide whether the above-quoted policy (No. DOS 60 84 866), or a later renewal policy (No. DOS 60 86 442) applies. The later policy also includes the "insured v. insured" exclusion, in slightly different language:

> Insured v. Insured Exclusion It is understood and agreed that the Company shall not be liable to make any payment for Loss in connection with any claim made against the Directors and Officers by any other Director or Officer of the Bank/Association or by the Bank/Association, except for a shareholders' derivative action when such action is brought by a shareholder who is neither a Director nor Officer of the Bank/Association nor a beneficial holder of shares for a Director or Officer of the Bank/Association.

Buckley dec. ex. B. The difference between the two versions of the "insured v. insured" exclusion is not material.

2. When a financial institution has failed, FSLIC or FDIC can 1) try to keep it running, by providing certain kinds of assistance; 2) close it and liquidate its assets; or 3) execute a "purchase and assumption" transaction in which another financial institution assumes the liabilities to the depositors of the failed institution. See Note, Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail, 62 So.Cal.L.Rev. 253, 259 (1988).

In a typical purchase and assumption transaction, the insurance fund (FSLIC or FDIC), acting as receiver, sells the assets and liabilities of the failed institution, including the institution's liabilities, to a going institution. See Gunter v. Hutcheson, 674 F.2d 862, 865 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The insurance fund as receiver keeps certain inferior assets which it then may sell to the insurance fund in its corporate capacity.

day, FSLIC/Receiver transferred substantially all of its liabilities and assets, including the claims at issue here, to FSLIC in its corporate capacity ("FSLIC/Corporate"). (Skilling dec. ex. G.)

The two underlying state actions were removed to federal court in Hawaii and the Northern District of California by FSLIC/Corporate in September, 1988. On August 9, 1989 FSLIC was abolished by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, which transferred its assets, including the claims at issue here, to the FSLIC Resolution Fund, which is managed by the FDIC. FIRREA §§ 215, 401(a)(1), 103 Stat. 252, 354. By operation of statute, FDIC became the plaintiff in both underlying actions. FIRREA § 401(f)(2), 103 Stat. 356. In November 1989, FDIC as Manager of the FSLIC Resolution Fund filed a Third Amended Complaint in the underlying California action, *FDIC v. Zandstra, et al.*, 88–3757–WWS, and intervened in this action.

*Discussion*

Under California law, the words used in an insurance policy are to be interpreted according to their plain meaning. *See, e.g., Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 631, 640 P.2d 764, 767 (1982). Any limitations on the character and extent of the risk the insurance company intends to assume need to be set forth in plain and understandable language, *e.g., VTN Consolidated, Inc. v. Northbrook Ins. Co.*, 92 Cal.App.3d 888, 892, 155 Cal.Rptr. 172, 173 (1st Dist.1979), and any ambiguities or uncertainties should be resolved in favor of coverage. *E.g., Holz Rubber Co. v. American Star Ins. Co.*, 14 Cal.3d 45, 55, 120 Cal.Rptr. 415, 420, 533 P.2d 1055, 1060 (1975). Any exclusionary clauses must be phrased in clear and unmistakable language, and must be

construed strictly against the insurer, in order that the purpose of the insurance policy not be defeated. *E.g., Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d at 808, 180 Cal.Rptr. at 632, 640 P.2d at 768; *Crane v. State Farm Fire and Cas. Co.*, 5 Cal.3d 112, 115–16, 95 Cal.Rptr. 513, 514 (1971). As with other contracts, the intent of the parties to an insurance contract is controlling, and their expectations and purposes should be considered when interpreting the policy. *E.g., Pisciotta*, 30 Cal.3d at 809, 180 Cal.Rptr. at 633, 640 P.2d at 769; *Dart Equipment Corp. v. Mack Trucks, Inc.*, 9 Cal.App.3d 837, 847, 88 Cal.Rptr. 670, 677 (2d Dist.1970).

Here, the issue is whether the provision that excludes from coverage "any claim made against the Directors and Officers ... by the Association, except for a shareholders' derivative action," applies where the claim has devolved, by operation of statute, upon the FDIC.

This issue is decided by the existence of the exception for shareholder derivative actions in the "insured v. insured" exclusion. The existence of this exception demonstrates that Fidelity intended to place itself on the risk for actions against the directors and officers based upon allegations of mismanagement, waste, fraud, or abuse of Homestate. These are precisely the claims being brought by FDIC against the directors and officers now. The obvious intent behind the "insured v. insured" exclusion is to protect Fidelity against collusive suits among Homestate and its directors and officers.

While Fidelity contends that the "insured v. insured" exclusion is not designed solely to protect it against collusive suits, it has come forward with neither evidence nor plausible argument to demonstrate that there was any other justification or purpose behind the exclusion.[3] Fidelity's con-

---

The fund itself, in its corporate capacity, may then attempt to collect on those assets to minimize the loss to the fund. *Id. See also FDIC v. National Union Fire Ins. Co. of Pittsburgh*, 630 F.Supp. 1149, 1153–54 (W.D.La.1986); *Washington Fed. Savings and Loan v. Home Loan Bank Board*, 526 F.Supp. 343, 400 (N.D.Ohio 1981).

3. Fidelity's purported "wing-nut" justification (Rep. at 20) for the shareholder derivative exception to the "insured v. insured" exclusion does not indicate that Fidelity intended to protect itself from paying claims for actions in which directors or officers are found liable for mismanagement, fraud, etc.; even minority

cern with collusive suits, in which an insured corporation might in essence seek to get Fidelity to pay for its managers' mistakes or poor business decisions, is certainly a valid one, but it is not implicated here.

There can be no real dispute that FDIC is a genuinely adverse party to the defendant officers and directors. While Fidelity may be correct in its contention that when the underlying actions were originally filed by the new Homestate directors in June 1986, the exclusion applied to that action, it does not follow that when FSLIC took over the action, the exclusion still applied. The exclusion would properly apply to actions commenced by a new, apparently "clean" board of an insured company because the insurer concerned about collusive suits should not be put to the burden of scrutinizing the membership of each new board, and deciding whether that board is sufficiently "clean" and genuinely adverse to the defendants being sued to allay its concerns. Similarly, Fidelity's contention is well taken that an insured company should not be able to escape the effect of the exclusion merely by selling to some unrelated third party the right to maintain a collusive suit. Here, however, FSLIC (and later FDIC) took over the action under operation of law, pursuant to its statutory mandate to pay insured depositors of the failed S & L "as soon as possible," 12 U.S.C. § 1728(b), and thereafter to maximize Homestate's assets and reimburse the expenditures incurred by FSLIC/Corporate. It is clear beyond doubt, and without requiring Fidelity to engage in any close scrutiny, that FSLIC's (and now FDIC's) involvement in the underlying actions is not collusive. The "insured v. insured" exclusion therefore does not excuse Fidelity from coverage.

As an alternative ground, the Court finds that FDIC does not merely stand in the shoes of Homestate. "Courts which have analyzed the role of FDIC corporate have

recognized for over forty years that the FDIC does not strictly 'step into the shoes' of a failed bank." *American Cas. Co. of Reading, Pa. v. FDIC*, 713 F.Supp. 311, 316 (N.D.Iowa 1988) (citing *D'Oench, Duhme and Co., Inc. v. FDIC*, 315 U.S. 447, 472–73, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *see also FDIC v. National Union Fire Insurance Co. of Pittsburgh*, 630 F.Supp. 1149 (W.D.La. 1986). Under statute and regulations, FDIC (and formerly FSLIC) may bring suit not only as successor to Homestate, and not only on behalf of itself as a creditor, but also on behalf of the creditors and shareholders of Homestate, and as subrogee to the rights of depositors against Homestate. 12 U.S.C. § 1821(d), (g) as amended by FIRREA § 212, 103 Stat. 222, 225, 241; 12 U.S.C. § 1823(d)(3) as amended by FIRREA § 217, 103 Stat. 254; 12 U.S.C. §§ 1729(b)(2), 1729(c)(1)(B)(i)(II); 12 C.F.R. §§ 548.2(f), 549.3(a), 569a.6(3).

Fidelity contends, however, that in the underlying actions here, FDIC has not in fact asserted any claims of depositors, creditors, or shareholders, but has simply proceeded on the claims of Homestate— merely taking over the actions previously filed by Homestate's directors, without significant change. Fidelity dismisses as "gratuitous" (rep. at 9) the statement in FDIC's Third Amended Complaint in the underlying California Action, *FDIC v. Zandstra, et al.*, 88–3757–WWS, that "[t]he FDIC is pursuing this action as Manager of the FSLIC Resolution Fund, on the Fund's behalf, and for the benefit of Homestate's depositors, other creditors, and shareholders." (¶ 8 at 4.) Further, Fidelity contends that FDIC could not possibly assert those claims against the directors and officers because any such claims, originally held by the depositors, creditors, or shareholders, would be claims against Homestate itself, not against the directors and officers.[4] As

---

shareholders may have valid claims, premised on director or officer misfeasance, on which they may prevail.

**4.** Fidelity contends, further, that under the relevant statutes, FDIC acquires only those rights and claims of depositors and creditors which

could have been asserted directly against the institution, and not those assertable against the directors and officers.

discussed below, however, the FDIC itself has incurred losses as a result of the directors' alleged misfeasance, because of its unique statutory responsibility to bail out failing financial institutions. Its claims against the directors can therefore not be viewed in a strict and formalistic sense as merely the claims of the nonexistent Homestate, now subrogated to Homestate's "creditor", the FDIC.

Fidelity also overlooks the fact that in order to transfer Homestate to Old Stone, FSLIC had to pay out over $5 million. That amount represents the potential loss to creditors and depositors that FSLIC took upon itself, as required by law, in its attempt to avert loss to the third parties. Any recovery by FDIC in the underlying actions against the officers and directors is properly understood as a reimbursement for its loss incurred on behalf of the third parties, whose claims it holds. That these claims might originally have been assertable only against Homestate itself, not the directors and officers, is immaterial. FSLIC/Corporate incurred a $5 million loss allegedly caused by the actions of the underlying defendants, on behalf of the third parties. FDIC is entitled to attempt to recover that loss, and seeks to do so not only as a stand-in for Homestate, but as reimbursement for the money spent by FSLIC/Corporate to protect the creditors, depositors, and shareholders. *See Branning v. CNA Ins. Companies,* 721 F.Supp. 1180, 1185 (W.D.Wash.1989). It thus necessarily represents the interests of the defunct FSLIC/Corporate itself (now the Resolution Fund) and is maintaining the underlying actions on the Fund's behalf. In a very real sense, therefore, it can be understood as possessing independent claims against the directors and officers.[5]

In addition, the exclusion as applied to actions maintained by FSLIC/FDIC is ambiguous. Under California law, an ambiguous term in an insurance contract must be interpreted in favor of coverage. The exclusion at issue here does not state that it applies to actions brought "by or in the right of Homestate," *cf. Evanston Ins. Co. v. FDIC,* No. CV 88-0407 (C.D.Cal. May 17, 1988), or include similar language which would indicate an intent to include Homestate's successors. Further, Fidelity attempted to include, in the renewal policy, another separate exclusion (the "regulatory exclusion") which explicitly excludes coverage for actions brought by any government regulatory agency, including FDIC or FSLIC.[6] Taken together, these alternatives demonstrate that it was well within Fidelity's power and knowledge to clearly indicate any intent to include within the "insured v. insured" exclusion actions maintained by FDIC or FSLIC. *See American Cas. Co. of Reading, Pa. v. FSLIC,* 704 F.Supp. 898, 901 (E.D.Ark.1989) (relying in part on existence of "regulatory exclusion" to find "insured v. insured" exclusion ambiguous as applied to action by FSLIC). The exclusion as written does not clearly indicate any such intent, and therefore does not meet the requirements of California law applicable to exclusion clauses. *See Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 808, 180 Cal.Rptr. 628, 632, 640 P.2d 764, 768; *Crane v. State Farm Fire and Cas. Co.,* 5 Cal.3d 112, 115–16, 95 Cal.Rptr. 513, 514 (1971).

A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable. *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 562, 718 P.2d 920, 924 (1986). That it is ambiguous

---

**5.** The case at bar is thus distinguishable from *Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469, 482–83 (C.D.Cal.1987), in which FSLIC/Receiver had never executed a "purchase and assumption" agreement, had never sold the bank's liabilities to FSLIC/Corporate, and in bringing an action against the insured directors was acting solely as *receiver* for the failed S & L, and not on its own behalf in its corporate capacity. The *Mt. Hawley* court appears to have relied on that distinction in holding that actions brought by

FSLIC fell within the "insured v. insured" exclusion. In addition, the exclusion at issue in *Mt. Hawley* did not contain an exception for shareholder derivative suits.

**6.** Following a request by the Court for briefing on the issue of the applicability and enforceability of the "regulatory exclusion," Fidelity informed the Court that it would not be relying on that exclusion in this action.

is thus also evidenced by the fact that the courts which have considered the applicability of similar "insured v. insured" exclusions to actions maintained by the FDIC or FSLIC have reached varying conclusions. Of the courts which have ruled on this issue, nearly all have refused to hold as a matter of law that the exclusion applies against the FDIC/FSLIC,[7] while only two have held the opposite.[8] This division of judicial opinion is evidence that the "insured v. insured" exclusion is ambiguous, at best, as applied to the FSLIC or FDIC. *See* Annotation: *Division of Opinion Among Judges ... Considering Same Question, as Evidence that Particular Clause of Insurance Policy is Ambiguous,* 4 A.L.R.4th 1253 (1981), and cases gathered therein. Fidelity clearly has not met its burden to establish that its interpretation of the exclusion "is the *only* reasonable construction which may fairly be placed on [it]." *Steven v. Fidelity and Cas. Co. of New York,* 58 Cal.2d 862, 875, 27 Cal.Rptr. 172, 180, 377 P.2d 284, 292 (1962) (emphasis in original).[9]

*Conclusion*

For the forgoing reasons, Fidelity's motion for summary judgment is denied.[10]

IT IS SO ORDERED.

---

**7.** *See Branning v. CNA Ins. Companies,* 721 F.Supp. 1180, 1184–85 (W.D.Wash.1989) (exclusion does not apply); *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088, 1098 (N.D.Tex.1989) (exclusion ambiguous as to FDIC/FSLIC and therefore not applicable); *American Cas. Co. of Reading, Pa. v. FSLIC,* 704 F.Supp. 898, 902 (E.D.Ark.1989) (ambiguous and therefore not applicable); *American Cas. Co. of Reading, Pa. v. FDIC,* 713 F.Supp. 311, 316 (N.D.Iowa 1988) (material facts exist as to whether exclusion applies to FDIC) (overruling earlier grant of summary judgment for insurance company in *American Cas. Co. v. FDIC,* 677 F.Supp. 600, 604 (N.D.Iowa 1987)); *FSLIC v. MMahat,* No. 86–5160, 1988 WL 19304 (E.D.La. March 3, 1988) (Fidelity's Request to Take Judicial Notice, Ex. C.) (exclusion not applicable to actions brought by FSLIC); *FDIC v. National Union Fire Ins. of Pittsburgh,* 630 F.Supp. 1149, 1157 (W.D.La. 1986) (exclusion unclear on its face; factual dispute regarding intent of parties precludes summary judgment); *National Union Fire Ins. Co. of Pittsburgh v. FDIC,* No. Civ. 3–85–51, 1985 WL 6006 (E.D.Tenn. May 3, 1985) (FDIC's Request to Take Judicial Notice) (exclusion unclear on its face; factual question exists whether parties intended exclusion to apply to FDIC actions.)

**8.** *See Mt. Hawley Ins. Co. v. FSLIC,* 695 F.Supp. 469, 481–84 (C.D.Cal.1987); *Evanston Ins. Co. v. FDIC,* No. CV–88–0407–WDK (C.D.Cal. May 13, 1988). The court in *Evanston* later vacated its grant of summary judgment, after a defendant requested permission to present extrinsic evidence of intent regarding the exclusion. *Evanston Ins. Co. v. FDIC,* No. CV–88–0407–WDK (July 1, 1988). (Fidelity's Request to Take Judicial Notice Exs. A, B.)

**9.** Fidelity contends that even if the exclusion is ambiguous, the directors and officers could have had no reasonable expectation of coverage for the underlying actions, and thus are not entitled to coverage. *See Pisciotta,* 30 Cal.3d at 808, 180 Cal.Rptr. at 632, 640 P.2d at 768 (purpose of rule resolving ambiguities against insurer is "to protect the insured's reasonable expectation of coverage...."). Fidelity contends that because the directors and officers did not expect coverage for the actions brought by Homestate, they could not have expected to be insured against the same actions simply because they were taken over by FSLIC/Corporate or FDIC.

Because they were covered for shareholder derivative actions, however, the directors and officers did have a reasonable expectation that they would be covered for actions based upon their breach of duties owed to Homestate, so long as Homestate was not the plaintiff (the current situation in the underlying actions). That was their expectation at the time the policy was written, and the later-occurring fact that the underlying actions originally were brought by Homestate, does not retroactively make that expectation less reasonable. Given the coverage for shareholder derivative actions, the ambiguity of the language of the exclusion, and the purpose of the policy as a whole, the expectation that coverage would exist for actions maintained by the FDIC or FSLIC was reasonable, as a matter of law.

**10.** Fidelity has stated that it believes certain other exclusions contained in the policy may apply to preclude coverage (e.g., exclusions for claims that an insured gained a personal profit improperly, or acted dishonestly), and has reserved its rights under those exclusions. (Fidelity May 22 mem. at 3 n. 2.; Jan. 25, 1990 letter to Court at 2.) It is thus not appropriate at this time to enter summary judgment in favor of defendants.