**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**BANCINSURE, INC., Defendant.**

Case No. CV 12–09882 DMG (MRWx).

United States District Court, C.D. California.

Signed June 16, 2014.

Larry Mark Golub, Barger & Wolen LLP, Sandra I. Weishart, Hinshaw & Culbertson LLP, Los Angeles, CA, for Plaintiff.

Carleton Ray Burch, David T. Dibiase, Mark J. Krone, Anderson McPharlin and Conners LLP, Los Angeles, CA, Richard P. Tricker, Winget Spadafora Schwartzberg LLP, Los Angeles, CA, Andrew B. Downs, Bullivant Houser Bailey PC, San Francisco, CA, Loren D. Podwill, Bullivant Houser Bailey PC, Portland, OR, for Defendant.

## ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT [DOC. ## 27, 28]

DOLLY M. GEE, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. The hearing took place on June 13, 2014. [Doc. ## 27, 28]. The Court has duly considered the arguments and evidence presented in support of and in opposition to the Motions, including arguments made at the hearing. For the reasons discussed below, Plaintiff FDIC's Motion is **GRANTED** and Defendant BancInsure's Motion is **DENIED**.

### I.

### FACTUAL BACKGROUND

#### A. *Evidentiary Objections*

The parties raise voluminous evidentiary objections to exhibits filed by the opposing party. [Doc. ## 43–2, 42–2, 48–1, 49–1, 49–2, 49–3, 50, 51.] The Court addresses the objections as necessary below. The Court does not address objections pertaining to facts it deems immaterial to the resolution of the Motions.

#### B. *Material Undisputed Facts*

In January 2007, BancInsure issued a Directors' and Officers' Liability Insurance Policy Including Company Reimbursement, No. 04DO00378–2 (the "Policy") to Security Pacific Bank, under which the Bank's Directors and Officers ("D & Os") qualified as "Insured Persons." (Plaintiff's Statement of Uncontroverted Facts ("PSUF") ¶ 1 [Doc. # 27–2].) The Policy period was from January 2007 to January 2010. (*Id.* ¶ 3.) On November 7, 2008, the California Department of Financial Institutions ("DFI") ·closed Security Pacific Bank, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver. (PSUF ¶ 19.) Under the terms of the Policy, when the Bank ceased operations on November 7, 2008, the Policy coverage also ceased. (*Id.* ¶ 12.)

#### 1. *Relevant Policy Provisions*

The Policy is a "Claims–Made Policy" containing a "Notice of Claim" provision as follows:

A. The Insured Persons and the Company shall, as a condition precedent to their rights under this Policy, give the Insurer notice, in writing, as soon as practicable of any Claim and shall give the Insurer such information and cooperation as it may reasonably require.
B. If, during the Policy Period, any Insured Person or the Company (1) receives written or oral notice from any party that it is the intention of such party to hold any Insured Person responsible for a specific alleged Wrongful Act, or (2) becomes aware of any circumstances that may give rise to a Claim against any Insured Person for a specific alleged Wrongful Act; and, as soon as practicable gives written notice of the potential Claim to the Insurer as referenced in subsections (1) and (2) above, which notice is in any event received by the Insurer no later than thirty (30) days following the end of the Policy Period, and such notice includes (1) the reasons for anticipating such a Claim, (2)

the nature and date of the alleged Wrongful Acts, (3) the alleged injury, (4) the names of the potential claimants and any Insured Person involved in the alleged Wrongful Acts, and (5) the manner in which any Insured Person or the Company first became aware of the potential Claim, then any Claim, the potential of which was specifically identified as required above, shall, for the purpose of this Policy, be treated as a Claim made during the Policy Period."

(Sandra I. Weishart Decl. ¶ 4, Exh. 2 at 10 (Policy at Section IX) [Doc. # 27–3].)

In addition, the Policy's "Insured v. Insured Exclusion" provides, in relevant part:

Section V. Exclusions.

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured Persons based upon, arising out of, relating to, in consequence of, or in any way involving:

\* \* \*

11. a Claim by, or on behalf, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company except for:

(a) a shareholder's derivative action brought on behalf of the Company by one or more shareholders who are not Insured Persons and make a Claim without the cooperation or

solicitation of any Insured Person or the Company. . . .

(*Id.* at 7.) The Policy also contains a "Regulatory Endorsement," which deletes the regulatory coverage exclusion.[1] (*Id.* at 23.)

### 2. *BancInsure's Notice of Potential Claims*

On November 5, 2008, Amy B. Briggs, counsel for Security Pacific, sent a letter to BancInsure.[2] (Weishart Decl. ¶ 17, Exh. 15.) The letter stated that it was providing notice of a claim pursuant to Section IX of the Policy. (*Id.*) It further stated that the FDIC had issued a cease and desist order to Security Pacific Bank in April 2008, but the Bank was in violation of the order. (*Id.*) As a result, it warned that the FDIC "may liquidate and take possession of the Bank, as a result of which the FDIC and the DFI may bring enforcement actions against the individual D & Os of the Bank. Should you need a list of the current D & Os, please let me know and we will provide it for you." (*Id.*)

On November 6, 2008, BancInsure responded to Briggs' letter, acknowledging "receipt of your notice of a potential claim," and assigning Donald R. Pratt, Jr. to the investigation of the claim. (Weishart Decl. ¶ 18, Exh. 16.)

On November 6, 2008, Briggs wrote a second letter to BancInsure, to "ensure

1. The regulatory coverage exclusion would have barred coverage for "any action or proceeding brought by on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization," including any type of action which such regulatory agency may bring as a receiver or in any capacity. (Weishart Decl. ¶ 4, Exh. 2 at 23.)

2. BancInsure objects to the admission of this letter and all letters by Briggs for any purpose other than establishing the fact of communication. BancInsure argues that the content

of the letters is irrelevant and prejudicial because any description of potential claims at that time was premature and speculative. (*See, e.g.,* Defendant's Evidentiary Objections, Objection to Exhs. 15–19 [Doc. # 43–2].) The Court overrules these objections. The letters are relevant to the issue of notice to BancInsure of the FDIC's potential claims. And a review of BancInsure's objections reveals that it is contesting the merits—the sufficiency of the notice—rather than raising an evidentiary objection.

compliance with Section IX. of the Policy," stating:

> In addition to any enforcement action, the FDIC, as receiver for the Bank, may bring a civil action against the individual D & Os seeking to recover money damages as a result of their alleged conduct. See 12 U.S.C. § 1821(k). Any such civil lawsuit would likely be based on allegations related to the following "Wrongful Acts" as set forth in the Cease and Desist Order referenced previously . . . [enumerating acts].

(Weishart Decl. ¶ 19, Exh. 17.)

On November 7, 2008, Claims Adjuster Ted Equals sent a letter to Briggs, requesting that Briggs provide him a list of current D & Os of the Bank, along with a copy of the FDIC's April 2008 cease and desist letter. (Weishart Decl. ¶ 21, Exh. 19.) That same day, Briggs emailed Equals the requested information. (Defendant's Statement of Genuine Dispute of Material Fact ("DSGDMF") ¶ 32.)

On November 13, 2008, Briggs sent a letter to Equals and Claims Manager William Van Butler, notifying them that the FDIC had been made receiver of the Bank and the D & Os could face regulatory action or civil suits. (Weishart Decl. ¶ 27, Exh. 25.)

On November 18, 2008, Briggs sent another letter to Van Butler and Equals, notifying them of, among other things, the names and titles of 14 D & Os of the Bank. (Weishart Decl. ¶ 28, Exh. 26.)

On October 11, 2011, counsel for the FDIC notified BancInsure of the FDIC's impending lawsuit against the D & Os. (DSGDMF ¶¶ 76–77.) Shortly thereafter, the FDIC also provided BancInsure a copy of a complaint the FDIC was prepared to file, which set forth specific claims and money damages to be pursued by the FDIC. (Id. at 78.)

### 3. Coverage Determination and Settlement Agreement

On November 30, 2011, BancInsure issued its coverage determination as to the FDIC's claims. (Weishart Decl. ¶ 57, Exh. 56.) First, it found that the Insured v. Insured Exclusion precluded coverage because the FDIC was acting as a receiver of the Bank. (Id. at pg. 5) Second, the letter specified that the notice requirements of Section IX.B of the Policy were not satisfied within thirty days of expiration of the Policy. (Id. at pg. 7.)

Subsequently, the FDIC, the D & Os, and BancInsure entered into a settlement agreement, effective August 8, 2012, whereby: (1) the D & Os assigned their rights under the Policy to the FDIC; (2) the parties agreed that the merits of the FDIC's claims against the D & Os would not be litigated and that instead the FDIC would file suit against BancInsure to determine whether the Policy provided coverage; and (3) that if coverage was found to exist, BancInsure would pay the Policy's $6,000,000 coverage limit to the FDIC. (DSGDMF ¶ 80).

Accordingly, on November 19, 2012, the FDIC filed a complaint in this Court for declaratory relief and breach of contract. [Doc. # 1.] The complaint asserts that BancInsure wrongfully denied coverage for the FDIC's claims against Security Pacific Bank's former D & Os. Both parties have moved for summary judgment as to the two coverage defenses asserted by BancInsure. [Doc. ## 27, 28.]

## II.

### LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *ac-*

cord *Wash. Mut. Inc. v. United States,* 636 F.3d 1207, 1216 (9th Cir.2011). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir.2010) (*en banc* ) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

 A court presented with cross-motions for summary judgment should review each motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences from the record. *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't,* 533 F.3d 780, 786 (9th Cir.2008), *cert. denied,* 555 U.S. 1098, 129 S.Ct. 903, 173 L.Ed.2d 108 (2009). The Court must consider all evidence submitted by both parties when ruling on cross-motions for summary judgment. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir.2001).

## III.

### *DISCUSSION*

#### A. *Plaintiff FDIC'S Motion for Summary Judgment*

 "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.,* 321 F.3d 924, 925–26 (9th Cir. 2003). "The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence." *Am. Alternative Ins. Corp. v. Superior Court,* 135 Cal.App.4th 1239, 1245, 37 Cal.Rptr.3d 918, 923 (2006) (citations omitted).

 Insurance contracts are governed by ordinary rules of contract interpretation. *Bank of the W. v. Superior Court,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Under California rules of contract interpretation, "the mutual intention of the parties at the time the contract is formed governs interpretation." *Hervey v. Mercury Cas. Co.,* 185 Cal. App.4th 954, 961, 110 Cal.Rptr.3d 890, 895 (2010) (quoting *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 821–822, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990)). A Court must construe contract terms in their ordinary sense. *Van Ness v. Blue Cross of Cal.,* 87 Cal.App.4th 364, 372, 104 Cal. Rptr.2d 511, 516 (2001) (citing Cal. Civ. Code § 1644); *see also Bodell v. Walbrook Ins. Co.,* 119 F.3d 1411, 1413 (9th Cir.1997) ("The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert.") (quoting *Crane v. State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 514, 485 P.2d 1129 (1971)). "Where contract language is clear and explicit and

does not lead to an absurd result, we ascertain this intent from the written provisions and go no further." *Id.* (citing Cal. Civ.Code, §§ 1638, 1639). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Powerine Oil Co., Inc. v. Superior Court,* 37 Cal.4th 377, 390, 33 Cal.Rptr.3d 562, 118 P.3d 589 (2005) (internal quotation marks omitted).

 To determine ambiguity, the Court first considers whether, in light of the extrinsic evidence, the language is "reasonably susceptible" to the interpretation urged. *Hervey,* 185 Cal.App.4th at 961–62, 110 Cal.Rptr.3d 890 (internal quotation marks and citations omitted). If so, then the Court admits the evidence to interpret the contract. *Id.* at 962, 110 Cal.Rptr.3d 890. While extrinsic evidence "may be admissible to determine whether the terms of a contract are ambiguous ... it is not admissible if it contradicts a clear and explicit policy provision." *Id.* (internal citations omitted).

 "Insurance policies are to be broadly construed to afford the greatest possible protection to the insured." *Bodell,* 119 F.3d at 1413 (citing *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 816, 514 P.2d 123 (1973)). The insurer bears the burden of establishing that an exclusion applies, and exclusionary clauses are "strictly" and "narrowly" construed against the insurer. *HS Servs., Inc. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 645 (9th Cir. 1997) (citations and internal quotation marks omitted). If there is ambiguity, it is the insurers' "burden to establish that their interpretation is the only reasonable one." *Fire Ins. Exch. v. Superior Court,* 116 Cal.App.4th 446, 466, 10 Cal.Rptr.3d 617, 633 (2004).

### 1. *Notice to BancInsure Was Legally Sufficient Under Policy Section IX.B*

 The parties agree that the Policy is a "claims-made policy." "Notice provisions in 'claims made' policies are strictly construed because notice determines if coverage is available under such policies." *Aletheia Research & Mgmt., Inc. v. Houston Cas. Co.,* 831 F.Supp.2d 1210, 1220 (C.D.Cal.2011) (citing *Am. Cas. Co. of Reading, PA. v. Continisio,* 17 F.3d 62, 69 (3d Cir.1994); *FDIC v. Barham,* 995 F.2d 600, 604 n. 9 (5th Cir.1993)).

 The parties dispute whether the notice was sufficient under Policy Section IX, Part B. Specifically, BancInsure asserts that the FDIC failed to timely provide, by December 7, 2008, "any of the information required." (Def's Mot. at 21.) The FDIC contends that the information contained in the letters from Briggs fulfilled the notice requirements, as stated in the Policy. The Court agrees with the FDIC.

First, the letters sent before December 7, 2008 provided the reasons for anticipating the FDIC's claims. The November 5, 2008 letter stated that the Bank had failed to maintain an adequate level of capital, the FDIC had notified the Bank of this failure in its Cease and Desist Order, and the Bank was in violation of the Order. (Weishart Decl. ¶ 17, Exh. 15.) In addition, the November 6, 2008 letter listed the provisions of the Cease and Desist Order that were allegedly violated. (*Id.* ¶ 19, Exh. 17.) The November 18, 2008 letter also stated that the Bank had operated with specific deficiencies. (*Id.* ¶ 28, Exh. 26.) These letters sufficiently notified BancInsure of the reasons for anticipating claims.

Second, the letters describe the nature of the wrongful acts. The November 6, 2008 letter states that any civil lawsuit

would likely be based on "allegations related to the following 'Wrongful Acts' as set forth in the Cease and Desist Order referenced previously." (*Id.* ¶ 19, Exh. 17.) The letter then enumerates nine specific acts:

(a) operating with management whose policies and practices are detrimental to the Bank and jeopardize the safety of its deposits;

(b) operating with a Board of Directors ("Board") which has failed to provide adequate supervision over and direction to the active management of the Bank;

(c) operating with inadequate capital in relation to the kind and quality of assets held by the Bank;

(d) operating with an inadequate loan valuation reserve;

(e) operating with a large volume of poor quality loans;

(f) engaging in unsatisfactory lending and collections practices;

(g) operating in such a manner as to produce operating losses;

(h) operating with inadequate provisions for liquidity; and

(i) operating with inadequate internal routine and controls policies.

(*Id.*) The Policy defines "Wrongful Acts" as "any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by any Insured Person acting solely in their insured capacities." (Weishart Decl. ¶ 4, Exh. 2 pg. 99.) These descriptions of alleged errors and breaches of duty fall within the Policy's "Wrongful Acts" definition. *Cf. Davis v. BancInsure, Inc.,* No. 12–113, 2013 WL 1223696, *5 (N.D.Ga. Mar. 20, 2013) (notice insufficient under identical notice provision because the plaintiff failed to "identify any actual or alleged error, misstatement, misleading statement, act or omission or neglect or breach of duty").

BancInsure asserts that the acts enumerated in the letter differ materially from the acts in the Draft Complaint. The Court rejects this contention. As detailed by the FDIC, each of these acts relate to facts underlying the claims in the Draft Complaint. (*See* FDIC's Opposition at 20 [Doc. # 20]; Draft Complaint [Doc. # 46].) Moreover, the Policy provides only that a potential claimant who is "aware of any circumstances that may give rise to a Claim" must provide notice of the alleged wrongful acts—not that the specific claims or legal theories later pleaded in the complaint must be set forth in the notice. (Weishart Decl. ¶ 4, Exh. 2 at 10.)

Although the dates of the acts are not specifically identified, the November 5, 2008 letter states that the FDIC issued a Cease and Desist Order in April 2008 that the Bank had not complied with and that, as a result, it was possible that the FDIC would liquidate and take possession of the Bank. (Weishart Decl. ¶ 17, Exh. 15.) BancInsure points to no case law supporting the proposition that the actual date of each "Wrongful Act" must be provided, as opposed to a time period (April 2008), and it is unreasonable to assume, without a specific requirement in the Policy, that a more precise date is required for ongoing acts such those listed in the Cease and Desist Order.

Third, the letters provided notice of the alleged injury to the FDIC. The November 6, 2008 letter informs BancInsure of a possible enforcement action and a civil action by the FDIC, as receiver for the Bank, against the individual D & Os "seeking to recover monetary damages as a result of their alleged conduct. *See* 12 U.S.C. § 1821(k)." (*Id.* ¶ 19, Exh. 17.)

Fourth, the November 6, 2008 letter gave notice that the FDIC was a potential

claimant. (*Id.*) In addition, the names of the Insured Persons against whom claims might be asserted, the D & Os, were provided on November 7, 2008 and November 18, 2008. (DSGDMF ¶ 32; Weishart Decl. ¶ 28, Exh. 26.)

Finally, the November 5, 2008 letter indicated the manner in which the FDIC first became aware of the potential claims, by stating that the Bank had failed to comply with its April 2008 Cease and Desist Order. (Weishart Decl. ¶ 17, Exh. 15.)

Accordingly, the notice to BancInsure comported with the notice requirements as stated in the Policy. To the extent the notice was not as detailed or specific as BancInsure would have preferred, it is not clear from the terms of the Policy that more specificity was required. Coverage must be construed broadly in favor of the insured. *Bodell,* 119 F.3d at 1413. The FDIC's Motion for Summary Judgment on the issue that notice under Policy Section IX, Part B, was sufficient as a matter of law is **GRANTED.**

### 2. *The Insured v. Insured Exclusion Does Not Preclude Coverage of the FDIC's Claims*

 BancInsure asserts that coverage for the FDIC's claims against the Bank's D & Os is barred by the Insured v. Insured Exclusion. According to BancInsure, the FDIC is both a "receiver" and a "successor" to the Bank. It thus contends that the plain text of the Exclusion applies. The FDIC does not dispute that the Exclusion language, when considered alone, appears to apply to it. Instead, it argues, among other things, that the "sharehold-

ers' suit exemption" to the Exclusion is evidence of BancInsure's intent to cover claims brought by the FDIC.[3] It points out that the FDIC, by statute, succeeds to a shareholder's right to bring a derivative action. The FDIC also contends that the shareholders' suit exemption creates an ambiguity as to whether the FDIC falls under the Insured v. Insured Exclusion at all. The Court concludes that the FDIC's claims are not excluded from coverage under the Insured v. Insured Exclusion based upon the shareholders suit exemption and ambiguity as to whether the Exclusion, even with the pertinent "receiver" language, applies to the FDIC.

Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183, when the FDIC is appointed "for the purpose of liquidation," or to "wind up the affairs" of a failed bank, it does so as the bank's receiver. 12 U.S.C. § 1821(c)(2)(A)(ii). As a receiver, the FDIC "shall ... succeed to ... all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution ...." *Pareto v. F.D.I.C.,* 139 F.3d 696, 700 (9th Cir.1998) (quoting 12 U.S.C. § 1821(d)(2)(A)(i); omissions in the original). In *Pareto,* the Ninth Circuit held that Section 1821(d)(2)(A)(i) "vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC." *Id.*

 Thus, by operation of section 1821(d)(2)(A)(i), the FDIC differs from

---

**3.** BancInsure argues that because the FDIC did not disclose that it was relying on the shareholders' suit exemption in its interrogatory responses (*see* Doc. # 43–11, Interrogatory Responses), the FDIC cannot now rely on this argument at summary judgment, citing Fed.R.Civ.P. 26(e). (BancInsure's Opp'n at

pg. 13–14, n. 6; *see also* DSGDMF ¶ 104 [Doc. # 43–1].) The objection is overruled. BancInsure demonstrates no prejudice resulting from the FDIC's failure to disclose that it would rely on this exemption to the Exclusion. Moreover, it is a legal argument, rather than a factual one.

other receivers insofar as it is given the exclusive authority to bring claims to recover losses by shareholders and others. *See, e.g., Progressive Cas. Ins. Co. v. F.D.I.C.,* 926 F.Supp.2d 1337, 1340 (N.D.Ga.2013); *FDIC v. Am. Cas. Co. of Reading,* 814 F.Supp. 1021, 1026 (D.Wyo. 1991); *FDIC v. Zaborac,* 773 F.Supp. 137, 143–44 (C.D.Ill.1991) *aff'd sub nom. F.D.I.C. v. Am. Cas. Co. of Reading, Pa.,* 998 F.2d 404 (7th Cir.1993); *Fid. & Deposit Co. of Maryland v. Zandstra,* 756 F.Supp. 429, 432 (N.D.Cal.1990); *see also Branning v. CNA Ins. Cos.,* 721 F.Supp. 1180, 1184 (W.D.Wash.1989) (applying analogous reasoning to claims by the FSLIC); *Am. Cas. Co. of Reading v. FSLIC,* 704 F.Supp. 898, 901–02 (E.D.Ark. 1989) (claims by the FSLIC). Because the Insured v. Insured Exclusion plainly exempts claims by shareholders, and the FDIC succeeds to shareholder's claims by operation of law, the FDIC's claims are exempted from the Exclusion just as shareholders' derivative claims would be if they could bring such claims themselves.[4] *See, e.g., Am. Cas. Co. of Reading, Pennsylvania v. Baker,* 758 F.Supp. 1340, 1349 (C.D.Cal.1991), *aff'd,* 22 F.3d 880 (9th Cir. 1994); *Am. Cas. Co. v. F.D.I.C.,* 791 F.Supp. at 278 (citing *Zandstra,* 756 F.Supp. at 431) ("This issue is decided by the existence of the exception for shareholder derivative actions in the 'insured v. insured' exclusion."); *Zaborac,* 773 F.Supp. at 144; *Branning,* 721 F.Supp. at 1184.

■■■ As BancInsure itself acknowledges, the Court must construe the terms of the contract in context. Under applicable case law, the "statutes and statutory definitions raised by the claim must be consulted in interpreting the policy." (Def's Mot. at 9 [Doc. # 28].) For this proposition, BancInsure relies upon *Bank of the West v. Superior Court,* where the California Supreme Court held that insurance policy terms "damages" and "unfair competition" could not be viewed in the abstract and must be read in context of what remedies were available under California statutory and case law. 2 Cal.4th 1254, 1265–67, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *see also* Cal. Civ.Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."). Therefore, the Court construes the Policy by looking to the applicable statutory context, as other courts have.

The Court's conclusion that the Insured v. Insured Exclusion does not bar the FDIC's claims accords with that of the majority of courts to construe similar insurance exclusions and exemptions as applied to the FDIC. *See Am. Cas. Co. v. F.D.I.C.,* 791 F.Supp. 276, 277–78 (W.D.Okla.1992), *aff'd sub nom. Am. Cas. Co. of Reading, Pa. v. F.D.I.C.,* 33 F.3d 62 (10th Cir.1994) (collecting cases); *see also BancInsure, Inc. v. McCaffree,* 3 F.Supp.3d 904, 913–14 (D.Kan.2014) (recognizing the majority view); *Davis v. BancInsure, Inc.,* No. 12–113, 2013 WL 1223696, *9 (N.D.Ga. Mar. 20, 2013) (same).

BancInsure relies on three district court cases that examined the identical Insured v. Insured Exclusion and held that the FDIC is excluded from coverage by the provision. *See Hawker v. BancInsure,*

---

**4.** At oral argument, BancInsure asserted that the shareholders' suit exemption language here differs from that in the majority of the cases finding the exemption applied. Specifically, BancInsure points to the language that a shareholder action does not fall within the exemption if the claim is made "with[ ] the cooperation or solicitation of any Insured or the Company." (Sandra I. Weishart Decl. ¶ 4, Exh. 2 at 8.) On the record before the Court, there is no evidence that such a caveat applies to the claims made by the FDIC.

*Inc.*, 2014 WL 1366201 (E.D.Cal.2014); *McCaffree*, 3 F.Supp.3d 904; *Davis*, 2013 WL 1223696. These three cases distinguish the cases holding that the Insured v. Insured Exclusion does not apply to the FDIC on the ground that the Insured v. Insured Exclusion at bar specifically excludes "receivers." *Hawker*, 2014 WL 1366201, *8–9; *McCaffree*, 3 F.Supp.3d at 913–14; *Davis*, 2013 WL 1223696, *9. The Court finds the reasoning of *Hawker, McCaffree*, and *Davis* unpersuasive in light of the shareholders' suit exemption and the applicable statutory context, as discussed above. Notably, these cases did not consider FIRREA or the impact of the shareholders' suit exemption on the Exclusion.

BancInsure's reliance on *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994), is also misplaced. In *O'Melveny & Myers*, the Supreme Court held that under 12 U.S.C. § 1821(d)(2)(A)(i), which provides that the FDIC shall "succeed to—all rights, titles, powers, and privileges of the insured depository institution," the "FDIC as receiver 'steps into the shoes' of the failed S & L." *Id.* at 86, 114 S.Ct. 2048. Yet, *O'Melveny & Myers* concerned California tort claims and whether the FDIC was estopped from asserting those claims because it stepped into the shoes of a savings & loan that would be estopped from asserting them—not the operation of a shareholders' suit exemption or anything analogous to the issue before this Court. Moreover, the Ninth Circuit, on remand, clarified that the Supreme Court's decision in *O'Melveny & Myers* does not establish that the FDIC always steps directly into

the shoes of a failed bank. It held that the FDIC's tort claims were not barred, even though the savings & loan it succeeded as a receiver could not have raised them, finding "significant ... the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct." *F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir.1995).

As numerous courts have similarly held, the shareholders' suit exemption evidences an "intent to place on [insurer] the risk for actions against the D & Os based upon allegations of mismanagement, waste, fraud, or abuse of the failed institution—precisely the claims brought by the FDIC against the D & Os."[5] *See, e.g., Baker*, 758 F.Supp. at 1349–50 (discussing and adopting the reasoning of *Zandstra*, 756 F.Supp. 429); *see also Am. Cas. Co. of Reading, PA. v. FDIC*, 791 F.Supp. at 278 (shareholders' suit exemption to the Insured v. Insured Exclusion "shows that the insurer intended to assume the risk of mismanagement ... and these are precisely the claims brought by the FDIC."). Based on this intent to hold the insurer liable for claims raised by shareholders, courts have found similar Insured v. Insured exclusions ambiguous in their application to the FDIC. *See, e.g., Progressive Cas. Ins. Co.*, 926 F.Supp.2d at 1340 (Insured v. Insured Exclusion is ambiguous because the FDIC differs from other receivers in that it can bring claims on behalf of shareholders).

That the Insured v. Insured Exclusion is ambiguous when applied to the FDIC is

---

**5.** These are precisely the claims asserted by the FDIC's draft complaint. The FDIC's Draft Complaint is submitted under seal as Exhibit 14 to BancInsure's Motion for Summary Judgment. [Doc. # 46.] It asserts claims against former directors and officers of Security Pacific Bank. (Compl. ¶ 2.) Specifi-

cally, the Complaint alleges negligence, gross negligence, and breaches of fiduciary duty by Defendants regarding loans made in violation of applicable laws, with deficient collateral, and with other risks. (*Id.* ¶ 203.) Such mismanagement claims are analogous to claims that could be brought by shareholders.

evidenced by the fact that courts considering this exclusion have reached varying conclusions. *Compare Baker*, 758 F.Supp. at 1349–50 *and Zandstra*, 756 F.Supp. at 433–34, *with Fid. & Deposit Co. of Maryland v. Conner*, 973 F.2d 1236, 1244–45 (5th Cir.1992) (holding that the Insured v. Insured Exclusion applies because the FDIC's claim did not "constitute a derivative shareholder/depositor claim" and a regulatory exclusion applied, but noting that "a number of courts" held otherwise when the FDIC and shareholders were suing D & Os); *see also* Peter D. Rosenthal, Have Bank Regulators Been Missing the Forest for the Public Policy Tree? The Case for Contract–Based Arguments in the Litigation of Regulatory Exclusions in Director and Officer Liability Policies, 75 B.U. L.REV. 155, 173–174 (1995) ("A majority of better-reasoned opinions holds that the 'insured v. insured' exclusion does not unambiguously exclude suits by the FDIC from coverage." (collecting cases)).

In conclusion, BancInsure has not met its burden of establishing that the Insured v. Insured Exclusion precludes coverage of the FDIC's claims, given the presence of the shareholders' suit exemption and the fact that the FDIC, in its unique statutory role, succeeds to all rights, powers, and privileges of shareholders by operation of law. At minimum, whether the Exclusion applies to the FDIC is ambiguous. Therefore, the Court construes the Exclusion in favor of coverage. *Bodell*, 119 F.3d at 1413 ("if any reasonable interpretation of the policy would result in coverage, a court must find coverage even if other reasonable interpretations would preclude coverage.").

The FDIC's Motion for Summary Judgment is **GRANTED** as to its claim that the Insured v. Insured Exclusion does not preclude coverage of the FDIC's claims.[6]

**B. *Defendant BancInsure's Motion for Summary Judgment***

For the same reasons that the FDIC is entitled to summary judgment on its claims for declaratory relief and breach of contract based on the applicability of the Insured v. Insured Exclusion and compliance with the Policy's notice requirements, BancInsure is not. Viewing the evidence in the light most favorable *to Plaintiff* does not alter this result. Accordingly, Defendant BancInsure's motion for summary judgment is **DENIED**.

**IV.**

***CONCLUSION***

In light of the foregoing, Plaintiff FDIC's Motion for Summary Judgment on all claims is **GRANTED**. Defendant Ban-

---

6. The Court has reviewed the extrinsic evidence submitted by the FDIC in this case as required by *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 39–40, 69 Cal.Rptr. 561, 442 P.2d 641 (1968); *see also George v. Auto. Club of S. California*, 201 Cal.App.4th 1112, 1122, 135 Cal.Rptr.3d 480, 485 (2011) ("After *Pacific Gas*, there is no doubt that parol evidence must be conditionally considered to determine mutual intention with respect to specified policy terms or provisions that are reasonably susceptible of more than one meaning."). Because the Court does not find that the contract is reasonably susceptible of more than one meaning *on the basis of the proffered extrinsic evidence*, it does not rely on that evidence for its decision. Thus, the Court need not address BancInsure's numerous objections to the admission of the extrinsic evidence.

In addition, because the Court finds in favor of the FDIC on the basis of the inapplicability of the Insured v. Insured Exclusion, it does not address FDIC's other arguments in favor of coverage, such as coverage under the Regulatory Endorsement and its alleged conflict with the Insured v. Insured Exclusion.

cInsure's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**